# SUPPLEMENT.

### OPINION OF THE JUSTICES TO THE
### HOUSE OF REPRESENTATIVES.

The General Court, under the provisions of the Constitution, may impose
and levy an excise upon the use of public ways by motor vehicles,
measured in part by the value of such motor vehicles, and subject to a
deduction on account of the value locally assessed on such motor
vehicles.

The House of Representatives in 1924 presented to the justices of the
Supreme Judicial Court a request for an opinion under § 3, art. 2, of
the Constitution and adjourned too early for an answer to be trans-
mitted. Before the reassembly of the General Court, a new House of
Representatives had been elected. In transmitting an opinion in
January, 1925, the justices stated that they had not considered and
did not express an opinion upon the question whether an opinion can
be required by one branch of the General Court for the use of its
successor.

THE following order was passed by the House of Repre-
sentatives on May 9, 1924, and was transmitted to the
Justices of the Supreme Judicial Court on May 14, 1924.

WHEREAS, There is pending before the General Court a
bill entitled " An Act to provide an excise on the use of the
ways by motor vehicles," being House document No. 1520,
a copy of which is herewith submitted; and

WHEREAS, Doubt exists as to the constitutionality of the
proposed measure if enacted into law; therefore be it

ORDERED, That the House of Representatives require
the opinions of the Honorable the Justices of the Supreme
Judicial Court upon the following important questions of
law, such opinions to be filed with the Clerk of the House of
Representatives at the convenience of the Honorable Jus-
tices: —

1. May the General Court, under the provisions of the
Constitution empowering it to impose and levy reasonable

duties and excises, or under any other provision of the Constitution, impose and levy an excise upon the use of public ways by motor vehicles, measured in part by the value of such motor vehicles, and subject to a deduction on account of the value locally assessed on such motor vehicles?

The proposed legislation, House document No. 1520, was entitled " An Act to provide an excise on the use of the public ways by motor vehicles " and contained the following provisions:

.SECTION 1. The General Laws are hereby amended by inserting after chapter fifty-nine, under the title " Excise Tax on Motor Vehicles for use of the Public Ways," the following new chapter: —

### CHAPTER 59A.

#### EXCISE TAX ON MOTOR VEHICLES FOR USE OF THE PUBLIC WAYS.

Section 1. Every inhabitant of this Commonwealth, including every partnership and every corporation either domestic or foreign, having a usual place of business therein, owning a motor vehicle or motor vehicles, shall, subject to the provisions of section five, pay annually with respect to each calendar year for the privilege of operating each such motor vehicle upon the public ways an excise as follows: a sum equal to such number of mills per dollar of the maker's current list price as of January first of the year of the excise if available or the maker's list price for the year of manufacture, in either case as determined by the commissioner of corporations and taxation, less the deduction therefrom hereinafter provided, as is set forth in the appended rate schedule, provided, nevertheless that a " dealer " as defined in section one of chapter ninety, shall not be required to obtain the permit hereinafter provided for registration of nor pay excise for the privilege of operating such motor vehicles as are owned solely for purposes of demonstration and sale and which constitute stock in trade.

Succeeding the year of manufacture there shall be deducted from the list price for the first year twenty-five per

cent thereof, for the second year fifty per cent, for the third year seventy-five per cent, and for the fourth and ensuing years ninety per cent.

There shall further be deducted the value as determined by the board of assessors of said motor vehicle as of the first day of April of any year if subject to local taxation in this Commonwealth upon such date. The excise under this act, however, shall in no case be less than two dollars for each motor vehicle but a motor vehicle operated and transferred within the year by an inhabitant may be operated for the remainder of the year without the payment of further excise for its use.

### RATE SCHEDULE.

Vehicles of less than thirty horse-power twenty mills per dollar,

Vehicles of thirty or more horse-power twenty-five mills per dollar.

Horse-power for the purpose of this chapter shall mean horse-power as determined by the registrar of motor vehicles in the department of public works in determining the registration fee provided in chapter ninety. The commissioner shall as soon as may be in each year report his determination under this section to the assessors.

Section 2. Subject to the general supervision of the commissioner of corporations and taxation, the board of assessors in each city and town shall determine the excise provided in sections one and five, and shall upon application issue a permit for registration or transfer of such motor vehicle, such application and such permit to be in such form as prescribed by the commissioner of corporations and taxation, and the assessors shall keep an accurate account of all such permits issued by them. The board of assessors may designate some other town officer or person to perform this duty. Permit shall be granted and assessment of the excise shall be made in the city or town in which the inhabitant resides at the time of issue of permit, or in the case of a partnership or corporation in the city or town where the motor vehicle is customarily kept if kept within the Commonwealth, otherwise in the city or town where the partnership or corpo-

ration has its principal place of business within the Commonwealth. No permit shall issue more than two and one-half months prior to the calendar year for which registration is sought. The provisions of chapters fifty-nine and sixty relative to assessment, commitment, collection, payment, abatement and administration of taxes upon tangible personal property shall so far as pertinent and not inconsistent herewith, be applicable to excise taxes under this chapter.

Section 3. No motor vehicle shall be registered by the registrar of motor vehicles nor shall there be transfer of registration unless at the time of application for such registration or transfer the permit provided for in section two shall be presented and filed with said registrar.

Section 4. The permits issued in accordance with this chapter for any calendar year shall expire at midnight upon the thirty-first day of December of such calendar year.

Section 5. The excise for the privilege of operating a motor vehicle registered during the period beginning with the first day of July and ending with the last day of December in any year shall be two thirds, and for the period beginning the first day of October and ending with the last day of December in any year shall be one third of the sum named in section one, and shall be committed by the board of assessors as soon as may be after the expiration of each of said periods, and shall be due and payable within thirty days of the date of commitment.

Section 6. All money collected under the provisions of this chapter shall be retained by the town in which it is collected.

Section 7. This chapter shall not be construed to alter or amend the provisions of law with respect to the registration of motor vehicles otherwise than to prohibit the registration of motor vehicles coming within the provisions of this chapter until the permit herein provided for has been obtained.

Section 8. Any person wilfully making any false statement to a person charged with the duty of issuing permits under this chapter shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine not exceeding twenty-five dollars.

Section 9. The commissioner of corporations and taxation shall make from time to time such reasonable rules and regulations as he may deem necessary for carrying out the provisions of this chapter.

SECTION 2.    This act shall become effective with respect to the use of motor vehicles during the calendar year of nineteen hundred and twenty-five and thereafter.

On January 12, 1925, the Justices returned the following answer:

To the Honorable the House of Representatives of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit this answer to the question set forth in the order of May 9, 1924, and transmitted on May 14, 1924.    That question is in these words:

" May the General Court, under the provisions of the Constitution empowering it to impose and levy reasonable duties and excises, or under any other provision of the Constitution, impose and levy an excise upon the use of public ways by motor vehicles, measured in part by the value of such motor vehicles, and subject to a deduction on account of the value locally assessed on such motor vehicles? "

Our opinion is required with reference to a proposed statute, copy of which accompanies the order.    It is entitled, " An Act to provide an excise on the use of the public ways by motor vehicles."    It is provided by section 1 that every inhabitant of the Commonwealth shall pay annually for each calendar year with respect to each motor vehicle owned by him, twenty mills, if less than thirty horse-power, and twenty-five mills, if thirty or more horse-power, on each dollar of its value as ascertained from the maker's current price list, with specified deductions therefrom according to the age of the motor vehicle and with deduction also of its valuation made for purposes of local taxation, the minimum excise in any event to be not less than two dollars.    The sum thus to be paid is termed an excise " for the privilege of operating each such motor vehicle

upon the public ways." Provision is made in other sections of the proposed statute for the issuance of a permit as prerequisite to the registration of such motor vehicle, for the enforcement of the terms of the statute by local officers of each city and town, and for the disposition of moneys collected under the act. Its provisions need not be further described.

The manifest design to be accomplished by the proposed act is the collection of a tax for the use of the highways by motor vehicles. There is no constitutional mandate which requires the Commonwealth or any of its territorial subdivisions to establish and maintain highways for public travel. The whole subject of laying out, constructing and repairing highways is vested in the General Court under the power and authority to enact " all manner of wholesome and reasonable orders, laws, statutes, and ordinances " not repugnant to the Constitution " as they shall judge to be for " the common good and general welfare. In the early days of the Commonwealth many, if not most, of the highways were built and maintained by private enterprise through turnpike corporations established by law and dependent for their support upon tolls charged to travellers. Bridges were built and maintained in the same way. Ferries were operated either in the same way or by municipalities, which collected tolls for their use. All highways and bridges, so far as we are aware, and some of the ferries, have been acquired by the Commonwealth or by counties, cities or towns. They thus have become the property of the Commonwealth either directly or through its governmental subdivisions. The free use of all highways has been provided at the expense of the public treasury for many years in this Commonwealth. This has not always been the custom. It is comparatively modern.

The power of government to take, acquire or construct instrumentalities for public travel and to charge toll, rental or other recompense therefor is illustrated in several decisions. *Commonwealth* v. *Wilkinson*, 16 Pick. 175. *George G. Fox Co.* v. *Boston & Northern Street Railway*, 217 Mass. 140, 142. *Boston* v. *Treasurer & Receiver General*, 237 Mass. 403, 414, and cases there reviewed.

If and so far as such tolls or rentals are based on fair recompense for the public moneys expended for initial construction and for adequate maintenance, they do not involve the power of taxation. They rest on the rights of the Commonwealth as proprietor of the instrumentalities used. As a sovereign power the Commonwealth may do as it will with its own, provided its action can be said to be in the public interest and not violative of constitutional guarantees. *Boston Fish Market Corp.* v. *Boston,* 224 Mass. 31. *Treasurer & Receiver General* v. *Revere Sugar Refinery,* 247 Mass. 483. *Carson* v. *Sewerage Commissioners of Brockton,* 175 Mass. 242. A familiar illustration of the exercise of such rights is the establishment and collection of rates for the use of water furnished by government. *Ladd* v. *Boston,* 170 Mass. 332. *Souther* v. *Gloucester,* 187 Mass. 552. *Shaw Stocking Co.* v. *Lowell,* 199 Mass. 118. *Merrill* v. *Revere,* 211 Mass. 468. *Brand* v. *Water Commissioners of Billerica,* 242 Mass. 223.

The power proposed to be exercised in the present bill is not of that nature. Avowedly an excise tax is established. The declaration to that effect is explicit. Such statutory statement is to be accepted as true unless incompatible with the meaning and effect of the act as a whole. *Lajoie* v. *Milliken,* 242 Mass. 508, 521. Moreover, the revenue to be obtained is not to be applied to the maintenance and repair of highways but is to be retained by the several cities and towns without restriction. It thus will become applicable to general public uses. That factor is not decisive but is entitled to weight in determining the nature of the exaction.

The words of the Constitution, c. 1, § 1, art. 4, granting the power to levy an excise are these: " full power and authority are hereby given and granted to the said general court . . . to impose and levy, reasonable duties and excises, upon any produce, goods, wares, merchandise, and commodities, whatsoever, brought into, produced, manufactured, or being within the same." The nature of an excise on " commodities " in this connection has been discussed in several decisions. In *Portland Bank* v. *Apthorp,* 12 Mass. 252, 256, it was said, " The term ' excise ' is of very general signification, meaning tribute, custom, tax, tollage, or assessment."

"Toll" — at that time a word in common use in connection with turnpikes and bridges — thus was mentioned more than one hundred years ago, in the first decision requiring a critical consideration of the meaning of the word "commodities" in the Constitution, as an illustration of an excise. That definition of excise was quoted in an important connection in *Minot* v. *Winthrop*, 162 Mass. 113, 119, 120, where it was said that that commodity "will perhaps embrace everything which may be a subject of taxation. . . . It . . . signifies convenience, privilege . . . " All public ways are acquired and maintained for the use of the public. We are not here concerned with attempts by cities or towns to charge a toll for the use of highways, but with the Commonwealth itself acting in its sovereign capacity with reference to a strictly public matter. See *Bolster* v. *Lawrence*, 225 Mass. 387, 389. The power of the General Court to enact general and equal laws on such a subject is very broad. "Toll" is the apt word to describe the collection of money for the use of a highway or bridge.

There are appearances of inequality about a toll upon the use of highways by motor vehicles. The fact that no toll is charged for the use of highways by other kinds of vehicles bears a superficial likeness to discrimination against motor vehicles. It is matter of common knowledge that the number of motor vehicles vastly exceeds all others and that a different highway construction as to durability and smoothness is required for their convenience. It is understood generally that the use of motor vehicles is highly destructive of highways and requires large expenditures for original construction or reconstruction and annual maintenance. The use of highways by other vehicles may be found by the General Court to be so small in quantity and so little destructive in quality, compared with that by motor vehicles, as to be negligible. There is no general provision in the proposed bill for charging toll for motor vehicles owned by nonresidents when used upon the highways of the Commonwealth. That, too, may be found to be small in comparison with domestic use. The expense of collection and difficulty of enforcement of the law concerning foreign owned motor

vehicles may be found to be prohibitive.  In any event these apparent inequalities cannot be said to be so great, as matter of law, as to invalidate the classification established by the proposed bill.

A modern instance of the collection of toll by way of excise tax is found in G. L. c. 63, §§ 62-66, for the operation of street railways in public ways.  *Collector of Taxes of Lakeville* v. *Bay State Street Railway*, 234 Mass. 336.  The collection of a tax by way of tollage or license for the use of public ways by motor vehicles has been upheld in other jurisdictions.  *Kane* v. *State*, 52 Vroom, 594.  *Kane* v. *New Jersey*, 242 U. S. 160. *Pierce Oil Corp.* v. *Hopkins*, 264 U. S. 137.  *Hendrick* v. *Maryland*, 235 U. S. 610.  *Opinions of the Justices*, end of 81 N. H.  *Standard Oil Co. of Louisiana* v. *Brodie*, 153 Ark. 114. *Harder's Storage Co.* v. *Chicago*, 235 Ill. 58.  *Ogilvie* v. *Hailey*, 141 Tenn. 392.  *State* v. *Lawrence*, 108 Miss. 291. *Matter of Schuler*, 167 Cal. 282.  *Terre Haute* v. *Kersey*, 159 Ind. 300.  *Jackson* v. *Neff*, 64 Fla. 326.  *Park* v. *Duluth*, 134 Minn. 296.  *Lillard* v. *Melton*, 103 S. C. 10.  *State* v. *Becker*, 288 Mo. 607.  *State* v. *Ingalls*, 18 N. M. 211. See *Opinion of the Justices*, 123 Maine, 573.  As matter of abstract principle we are of opinion that it is within the constitutional power of the General Court to levy an excise as a toll for the use of public ways by motor vehicles.

The method of collection and distribution of the excise proposed in the bill is not open to sound objection on constitutional grounds.  *Duffy* v. *Treasurer & Receiver General*, 234 Mass. 42.  *Knights* v. *Treasurer & Receiver General*, 237 Mass. 493.

The proposed bill plainly is a revenue measure.  It is not enacted in the exercise of the police power.  Cases involving consideration of that power, like *Commonwealth* v. *Slocum*, 230 Mass. 180, *Burgess* v. *Mayor & Aldermen of Brockton*, 235 Mass. 95, and *Pawloski* v. *Hess*, 250 Mass. 22, have no relevancy to the present question.

The proposed bill imposes an excise tax based in part upon value of the motor vehicle using the highway.  We assume that the " maker's current price list," which by § 1 of the proposed bill is made the basis of the excise, is equivalent to

the cost price and that it affords a standard substantially the same in respect to real value with reference to all makes of motor vehicles. If that assumption should turn out to be incorrect difficulties might arise. Excises founded in part upon the value of the property utilized in the exercise of the privilege thereby taxed are common. They involve no infraction of constitutional guarantees provided in other respects they are genuine excise taxes. *Farr Alpaca Co.* v. *Commonwealth,* 212 Mass. 156, and cases there reviewed. *Judson Freight Forwarding Co.* v. *Commonwealth,* 242 Mass. 47, 53. *Alpha Portland Cement Co.* v. *Commonwealth,* 244 Mass. 530, 546.

The deduction of assessed valuation from the list price, provided in § 1 of the proposed act, in principle stands on the same footing as the deduction of tangible property taxed locally under the corporation tax law of St. 1909, c. 490, Part III, § 41, Third, the constitutionality of which was settled by numerous decisions. *Commonwealth* v. *Hamilton Manuf. Co.* 12 Allen, 298. *Commonwealth* v. *Carey Improvement Co.* 98 Mass. 19, 22, 23. *Tremont & Suffolk Mills* v. *Lowell,* 178 Mass. 469. *United States Trust Co.* v. *Commonwealth,* 245 Mass. 75. An examination of the proposed bill plainly shows that it provides for an excise for the use of highways and not a property tax. So far as value is an element in the ascertainment of the excise, it may perhaps rest upon the inference that, the greater the value of a motor vehicle, the greater may be its weight and the more severe the wear caused to the highways by its use thereon.

A troublesome feature of the question and of the proposed bill arises from other statutes whereby taxes in various forms are levied in respect to ownership of motor vehicles. Motor vehicles are personal property. A property tax therefore is levied on them proportionally and reasonably in common with all other personal property in the Commonwealth. Const. Mass. c. 1, § 1, art. 4. G. L. c. 58, § 2. That circumstance does not prevent the levy of a lawful excise concerning the use by motor vehicles of highways.

Motor vehicles also must be registered in accordance with G. L. c. 90, before they can be operated on ways, §§ 2, 3, 4,

5, 6, 9.   There is ground for a contention that no statute requires the registration of a motor vehicle operated exclusively on private property and not on ways as defined in G. L. c. 90, § 1, last paragraph.   Compare St. 1909, c. 534, § 9, St. 1919, c. 88 and c. 294, § 3, and G. L. c. 90, § 9.   The imperative mandate requiring registration of all motor vehicles found in explicit words in the earlier statutes, St. 1903, c. 473, § 1, St. 1905, c. 311, § 2, St. 1906, c. 412, § 8, St. 1907, c. 580, § 1, and St. 1908, c. 648, § 3, was altered in phrase by St. 1909, c. 534, §§ 2, 31, to the form found in the present provisions of G. L. c. 90, §§ 2, 9.   Attention is called to this in passing without undertaking to determine whether it was anything more than a verbal modification not altering the real meaning of the statute.   See *Main* v. *County of Plymouth*, 223 Mass. 66, 69.   The true interpretation of the statute in that particular, whatever it may be, has no decisive bearing on the present question.

It is manifest from the history and the present provisions of G. L. c. 90, that its main purpose was to govern the operation of motor vehicles upon ways.   Most of its provisions are specifically to that point.   The trend of our decisions hitherto has been directed to those aspects of the statute. It has been said that the registration statute " was enacted, not only as a police regulation to govern the conduct of all persons in the State, but for the particular protection of travellers upon the highways, to guard them against the dangers that might arise from the operation of improper machines to which the State would not grant the privilege of registration, and to afford them means of redress in case of injury by enabling them readily to ascertain the name and address of the owner of an automobile from which they might suffer injury."   *Holden* v. *McGillicuddy*, 215 Mass. 563, 565, 566.   *Shufelt* v. *McCartin*, 235 Mass. 122, 125. *Fairbanks* v. *Kemp*, 226 Mass. 75, 78.   *Rolli* v. *Converse*, 227 Mass.   162, 164.   The dominant aim of the statute is to regulate the use of motor vehicles upon highways. That is a proper field for the exercise of the police power. The enactment of G. L. c. 90, in its main features is an exercise of the police power.

It was decided when the fee for registration of any motor vehicle was only $2, St. 1903, c. 473, §1, that such fee was a license and not a tax. *Commonwealth* v. *Boyd*, 188 Mass. 79. That registration fee was increased by St. 1907, c. 580, §1, to $5. Substantially the present schedule of very much larger fees, graduated according to horse-power, contained in G. L. c. 90, § 33, was first established by St. 1909, c. 534, § 29, and has been in force since that statute was enacted. The size of these fees compels the conviction that they are intended chiefly for the production of revenue. That inference is confirmed by the provisions of G. L. c. 90, § 34, as to the distribution and application of such fees. The public records show that a revenue, amounting to several million dollars annually in excess of the cost of administering the motor vehicle law, is now derived from that source. A license fee may be exacted as a part of or incidental to regulations established in the exercise of the police power. Such a fee commonly is commensurate with the reasonable expenses incident to the licensing and all that can rationally be thought to be connected therewith. The amount of the fees in such connection doubtless would not be scrutinized too curiously even if some incidental revenue were obtained. *Hendrick* v. *Maryland*, 235 U. S. 610, 622. There is however a clear distinction between a fee which lawfully may be required in the exercise of the police power and a tax which depends for its validity on the constitutional limitations governing taxation. Whatever may be the definition of the police power, it cannot be distended so as to include or be a substitute for taxation. The bounds of legislative power as to taxation are marked by distinct and unmistakable words in the Constitution of this Commonwealth. The history of constitutional government shows that clear definition and explicit restriction of the power of taxation was one purpose if not a chief motive in adopting written constitutions.

The great increase in the fees charged for registration of automobiles as compared with those in force when *Commonwealth* v. *Boyd*, 188 Mass. 79, was decided, and the extensive revenue now received from that source have wrought a change in the nature of that exaction from a mere fee to a

tax. While the exaction may still partake of some of the characteristics of a license fee, it is in essence a kind of taxation. It rests for its validity upon the power of taxation to be found in the Constitution. The schedule of fees established by G. L. c. 90, § 33, is not a property tax. It is not based on value but on horse-power of the motor vehicles. It is not proportional to the tax on other property. It is an excise tax. It is an excise tax on the privilege of registering for operation upon highways a motor vehicle as to construction, size, horse-power, lights, safety equipment, and otherwise, proper to be used in conformity to standing laws, all as approved by public officers. That is a commodity upon which an excise tax may be levied. It falls within the scope of decisions already cited and quoted in part. It belongs to the kind of excises illustrated by *Commonwealth* v. *Stodder*, 2 Cush. 562, 573, and *Boston* v. *Schaffer*, 9 Pick. 415.

That excise tax as to its subject is different from the excise outlined in the present question and proposed in the accompanying bill, which is an excise on the use of the highway by automobiles.

We assume that the assessment of two excise taxes, even though each be upon a separate basis and collected by different officers, for the enjoyment or use of one commodity by a single person for the same period of time would be unreasonable. *Connecticut Mutual Life Ins. Co.* v. *Commonwealth*, 133 Mass. 161, 163. The principle against double taxation stated in *Otis* v. *Boston*, 12 Cush. 44, 48, is assumed to be as applicable to excise as to property taxation. See *Commonwealth* v. *People's Five Cents Savings Bank*, 5 Allen, 428, 436. Accepting that principle fully, we are of opinion that while the proposed excise is closely akin to the excise upon the registration of motor vehicles, it nevertheless is sufficiently different as to the commodity upon which it is levied to avoid any constitutional inhibition. It is not obnoxious to the principle against double taxation.

Our conclusion is that the " commodity " of registering a motor vehicle as fit for use upon highways because conforming to all statutory requirements for the public safety is different from the commodity of actually using the highways

of the Commonwealth by the driving upon them of a motor vehicle. Each of these commodities may be subjected to an excise, provided the General Court in its wisdom determines that course to be wise.

It is settled by *Hendrick* v. *Maryland,* 235 U. S. 610, *Kane* v. *New Jersey,* 242 U. S. 160, and *Pierce Oil Corp.* v. *Hopkins,* 264 U. S. 137, that the enactment of a statute such as is outlined in the present question would violate no provision of the Constitution of the United States.

No opinion is expressed upon the validity of the proposed bill in all its details. *Opinion of the Justices,* 239 Mass. 606, 612. It has been examined and references have been made to it for making plain the scope and point of the question.

Therefore we answer the question in the affirmative.

The order requesting this opinion was received too late for answer before the adjournment of the Honorable House of Representatives. This opinion has been prepared and is transmitted before the assembling of the new House of Representatives whose members were elected at the November election of 1924. The question whether an opinion can be required by one branch of the General Court for the use of its successor has not been considered. That question is left open and the answer now made is not to be taken as an expression of opinion on it.

> ARTHUR P. RUGG.
> HENRY K. BRALEY.
> JOHN C. CROSBY.
> EDWARD P. PIERCE.
> JAMES B. CARROLL.
> WILLIAM C. WAIT.
> GEORGE A. SANDERSON.