15 P.(2d) 667

**CONTINENTAL OIL CO. v. CITY OF SANTA FE (two cases).**

**Nos. 3796, 3800.**

Supreme Court of New Mexico.

Oct. 14, 1932.

E. R. Wright and Donovan N. Hoover, both of Santa Fe, for Continental Oil Co.

M. W. Hamilton and Charles Fahy, both of Santa Fe, for City of Santa Fe.

WATSON, J.

Chapter 159, Laws 1931, attempts to authorize a municipal excise on sales of gasoline, not to exceed one cent per gallon. Its text will be essential to an understanding of the controverted questions, and of our conclusion as to its meaning. Inserting it here, we omit section 2, which merely defines terms.

"An Act Relating to the Assessments and Collection of License Tax Upon Gasoline and Oils Sold Within Municipalities.

"Section 1. That the governing bodies of certain towns and villages, whether incorporated under general or special act, shall have the power to fix and have collected a license tax upon gasoline and motor fuel sold within the limits of such municipalities and shall have the power to fix the amount of the license tax to be paid thereon; Provided, that no such license tax shall exceed the sum of one cent per gallon upon such gasoline and motor fuel sold within such municipality. * * *

"Sec. 3. That where gasoline or motor fuel is sold by a distributor of gasoline to a retail dealer in gasoline and subsequently sold by the retail dealer in gasoline to the consumer, the sale by the distributor of gasoline shall be construed as the taxable sale for purposes of this act. Provided, however, that where the sale from the distributor of gasoline to the retail dealer in gasoline takes place outside the limits of any incorporated city, town or village and the sale from the retail dealer in gasoline to the consumer takes place within the limits of any municipality, the sale by the retail dealer within the limits of such municipality shall be construed as the taxable sale for the purposes of this act and, such sale by the distributor of gasoline shall not be taxed by the county in which the sale is made.

"Provided, further, that where the sale from the distributor of gasoline to the retail dealer in gasoline takes place within the limits of any municipality and the sale from the retail dealer in gasoline to the consumer takes place outside the limits of such municipality, the sale by the retail dealer outside the limits of such municipality shall be construed as the taxable sale for the purposes of this act and such sale by the distributor of gasoline shall not be taxed by the municipality within which the same is made.

"Sec. 4. That the adoption and publication of an ordinance in the manner provided by law providing for such license tax shall be sufficient to put the same into effect in any municipality.

"Sec. 5. That the legislative and governing bodies of municipalities shall have the power to provide for the payment of such license tax within their respective jurisdictions, monthly, quarterly and semi-annually, as they deem proper and shall have the power to require the filing of monthly, quarterly and semi-annual or annual reports, by distributors of gasoline and retail dealers in gasoline, showing the quantity of gasoline and motor fuel sold within such jurisdiction during such specified period. Provided, further, that upon request, the State Comptroller, or such other officer or agency as shall be authorized by law to collect the state excise tax upon the sale of gasoline, shall furnish to any such city, town or village a statement of gasoline and motor fuel sold within the jurisdiction of such city, town or village as disclosed by the records of such officer or agency authorized by law to collect the state excise tax upon the sale of gasoline.

"Sec. 6. That all such license taxes so collected within the limits of any municipality shall be paid into the municipal treasury to be used for general municipal purposes or for any special purpose in the discretion of the governing authorities of the municipality.

"Sec. 7. That where any municipality elects to assess the license tax herein provided for, the same shall be in lieu of any other license or occupation tax which said municipality may be authorized to assess and collect against such dealers in gasoline and oils.

"Sec. 8. Municipalities shall have the power to provide by ordinance for penalties for the failure to make reports and remittances as provided in this act, or who shall knowingly sell or distribute any gasoline or motor fuel without the tax thereon having been paid, as specified by the ordinance of said city. Any distributor or retail dealer who shall fail to make reports and remittances required under any resolution of the board of county commissioners, under the provisions of this act, or who shall knowingly sell or distribute any gasoline without paying the tax thereon due to such municipality shall, upon conviction, be fined not less that fifty dollars nor more than one thousand dollars for each offense."

Undertaking to exercise this power, the city of Santa Fe passed Ordinance 800, exacting such excise on sales made on and after June 20, 1931. Under protest, plaintiff paid the amount accrued for the remainder of June, and, upon its suit to recover the payment, had judgment. The city's appeal is here docketed as No. 3796.

Ordinance 800 was repealed by Ordinance 875, effective January 7, 1932. Under protest, plaintiff paid the sum accruing under this ordinance up to February 1. In its action to recover this payment, it failed. Its appeal is here docketed as No. 3800.

The two causes have been submitted together. No. 3796 presents one question not common to both. It will be reserved until the last. Continental Oil Company, being plaintiff in both cases, will be so referred to.

Its first point is that the enabling statute, chapter 159, supra, does not extend the power to cities, and consequently not to the city of Santa Fe. The contention is based on the language of section 1: "That the governing bodies of certain towns and villages * * * shall have the power. * * *"

If section 1 stood alone, it would be impossible to conclude that cities were affected by it. But it cannot stand alone. Even towns and villages could not rely upon it. The power is granted, not to all, but to "certain," towns and villages. What towns and villages are affected must be determined from the further provisions of the act. Examining them we find, strangely, nothing to define "certain." Having implied at the outset that some towns and villages only are included, the act proceeds exactly as if all were embraced.

Hence the statute is ambiguous on its face. It calls for construction. If "certain" remains, it is destructive of the whole act. No municipality can be identified as a repository of the power. Unless the act is to be entirely ineffectual, there are but two alternatives: "Certain" must be discarded as superfluous and meaningless, or it must be determined from the other provisions what special meaning it bears, or what different word was intended.

It is very significant that if the word "cities" be substituted for "certain," complete harmony will result. The propriety and necessity of this substitution is strongly suggested by the fact that the word "cities"

obtrudes into the statute in manner inexplicable unless it was intended to confer this power upon cities. And, more particularly, "cities, towns and villages" occurs more than once as synonymous with "municipalities"; the latter term being used throughout the title and body of the act in describing the recipients of the power.

It may also be noted that the act bears on its face conclusive evidence of haste and carelessness in framing. The title and section 7 would indicate that oil as well as gasoline was to be taxed. Such purpose, no doubt once entertained, was not carried out. Sections 3 and 8 indicate that it was once proposed to confer the power on counties. Section 8 actually prescribes the penalty for failure to make reports and remittances required by resolution of a board of county commissioners.

The tax may be imposed upon both distributors and retail dealers. Section 5. But as to any particular gasoline, it is evidently not the intent that more than one sale shall be taxable. Section 3. So as counties were to have the same power as "municipalities," and as the retail sale might take place in a county, and the distributor's sale in a municipality, or vice versa, section 3 specifies which of the sales is to be taxed under given circumstances, and which, county or municipality, is to have the revenue. In this section we find "incorporated city, town or village" used as synonymous with "municipality." Here it is entirely plain that taxation by cities was contemplated.

Section 5, as well as section 1, directly confers the power. Here the term "municipalities" is used, as in the title and elsewhere. In aid of the power, this section requires the state comptroller to furnish required information to "any such city, town or village," as to gasoline sold "within the jurisdiction of such city, town or village." Why was this right of information given to the city of Santa Fe if it is not to be employed in collecting its revenue?

Section 4 makes the adoption of an ordinance sufficient to put the tax into effect "in any municipality." Section 6 implies that the tax may be collected in "any municipality." Section 7 implies that "any municipality" may elect to assess it.

These considerations lead us to the conclusion that the troublesome word "certain" appears in section 1 by inadvertence, and in place of the word "cities." Having thus determined the legislative intent from the face of the statute alone, the question is whether we should effectuate it, or whether, being merely a court and without legislative power, we must see the statute fail.

Interpretation of legislative language is the constant business of the courts. It has but one legitimate purpose; to arrive at and effectuate the true intent. This is to be determined, not from any one word or phrase, but from the whole enactment. The courts may not substitute their own wisdom and policy for the Legislature's. But they should not attribute to that co-ordinate branch an utterly unreasonable, inexplicable, and inef-

fectual intent. This statute is before us as the will of that governmental branch responsible for public policy as to municipal revenues. We should not nullify it for anything less than a real inability to comprehend its meaning.

It being plain that the Legislature did not intend to use the word "certain," precedent bids us substitute the word it did intend, if it can be unerringly determined.

We have substituted the word "collectible" for the word "uncollectible," thus imputing and enforcing an intent exactly the opposite of the absurd intent expressed. Baca v. Bernalillo County, 10 N. M. 438, 62 P. 979. We have substituted "they" for "he," thus giving the provision an entirely different and a reasonable, rather than an unreasonable, meaning. State v. Davidson, 33 N. M. 664, 275 P. 373. For the phrase "for the years 1920 and 1921," we have substituted "for the fiscal year 1920 and 1921," and have rejected entirely a provision that certificates of indebtedness were to be issued only "after tax levies are duly made therefor." State v. Southern Pacific Co., 34 N. M. 306, 281 P. 29, 31. "Additional compensation" has been interpreted as "additional allowance." Nye v. Board of County Commissioners, 36 N. M. 169, 9 P.(2d) 1023, 1024.

These are examples of exceptional construction which we readily call to mind. The principles of those cases seem applicable and controlling here.

Plaintiff urges that this being a tax statute, and also the sole source of a municipal power, the construction must be strict, and that only unequivocal language will confer the power and support the tax. The canons invoked are familiar and of unquestionable force in proper cases.

But there is present here plenty of unequivocal language signifying the intent. The difficulty arises from the one word, not so much equivocal or ambiguous, as plainly out of place and unintended. If that word were really equivocal, leaving it doubtful whether the statute was intended for cities, towns, and villages, or for towns and villages only, the rules invoked might apply. But the word must be rejected in any event. To stop there leaves us with a senseless act. The word is not merely superfluous. Another word was intended, and the context unerringly discloses it.

Criminal statutes are to be strictly construed. But, as said by Mr. Justice Roberts, " * * * they are not to be subjected to any strained or unnatural construction in order to work exemptions from their penalties. Such statutes must be interpreted by the aid of the ordinary rules for the construction of statutes, and with the cardinal object of ascertaining the intention of the Legislature." Ex parte De Vore, 18 N. M. 246, 136 P. 47, 49. See, also, State v. Southern Pacific Co., supra, where we construed a statute authorizing a special tax levy by a county.

■ Both ordinances, 800 and 875, prescribe as penalties for violations, a fine of from $10 to $200, or imprisonment from 5 to 60 days, or both. Plaintiff contends that such penal-

ty provision is void, and that this results in the invalidity of the whole ordinance. The basis of the contention is that chapter 159, supra, authorizing penalties, fails to limit them, and that, consequently, the city's power in the matter of penalties is controlled by 1929 Comp. St. § 90-901, generally limiting penalties for ordinance violations. The statute authorizes fine or imprisonment; the ordinance, both.

Plaintiff cites numerous decisions to its proposition that the penal provisions of an ordinance are void unless strictly in accord with those authorized by charter, and that the whole statute falls with its penal provisions. Many of these cases are collected in Brannon v. Wilmington, 31 Ohio App. 307, 165 N. E. 311.

Since no penalties are sought against plaintiff, the invalidity of those of the ordinance would be here immaterial unless it should result fatally to the ordinance as a whole, a result which the city denies and which we doubt, but leave undecided. We shall consider the claimed invalidity of the penalty sections.

Brannon v. Wilmington, supra, notices a contrary view stated in 19 R. C. L., "Municipal Corporations," § 116, thus: "When the penalty prescribed in the ordinance is in excess of that authorized by the charter, the ordinance is not void, and the penalty may be enforced to the extent that it does not exceed the lawful limit."

Plaintiff urges that City of Roswell v. Jacoby, 21 N. M. 702, 158 P. 419, commits us to its contention. There was no occasion in that case for holding the ordinance void, and we do not understand the court to have done so.

We think, rather, that consistency of principle commits us to the other view, at least in a case of this kind. In Cica's Case, 18 N. M. 452, 137 P. 598, 51 L. R. A. (N. S.) 373, a judgment including both fine and imprisonment was held not void in toto, though beyond the power of the court to pronounce. We deemed it severable and void only as to the excess. Compare Jordan v. Swope, 36 N. M. 84, 8 P.(2d) 788. If the sentence may be thus saved, surely the penalty provision may be.

■ Plaintiff challenges the constitutionality of chapter 159, supra. It is contended that the municipal excise, added to the state excise, results in double taxation. Admitting that the same sale is twice taxed under state authority, we find no constitutional prohibition of it, nor do we find in State v. Ingalls, 18 N. M. 211, 135 P. 1177, relied on by plaintiff, a condemnation of it; nor in Opinion of Justices, 250 Mass. 591, 148 N. E. 889, cited by appellant, anything to argue that what has been here done is obnoxious to the due process and equal protection, or any other provision, of our Constitution.

■ This disposes of the questions presented in No. 3800. In No. 3796, plaintiff pleaded that it had paid all license and occupation taxes demanded of it by the city for the privilege of carrying on its business as a distributor or a retail dealer, for 1931. This the city

admitted. On this fact judgment was rendered on the pleadings, on the theory, set up in plaintiff's motion therefor, that Ordinance 800 was void and unenforceable, constituting a double taxation prohibited by section 7 of the statute.

We cannot agree that the pleaded and admitted fact rendered the ordinance void or unenforceable, or that it supports the judgment.

The passage of Ordinance 800 was an election by the city to "assess" the license tax. Under section 7 of the act, existing license and occupation taxes were by such election suspended as to gasoline dealers. Plainly, the city could not exact and retain both the old and the new taxes. It does not follow that it must postpone the new tax until the next year, or that a dealer who chanced to have paid the old taxes for a period beyond the taking effect of the ordinance could escape the new taxes. All dealers must be affected alike. Liability could not depend upon payment or nonpayment of former taxes, nor upon the time of engaging in business, whether before or after the passage of the ordinance.

The ordinance makes no provision for refunding or crediting sums paid. That cannot render it void. The right to refund or credit flows from the statute. No principle of law recognized in this jurisdiction would have prevented the new tax from being added to the old. That result follows from the legislative declaration that the new shall be "in lieu of" the old. That requirement is naturally and reasonably satisfied by recognizing former payments in reduction of the new tax accruing. Plaintiff was not satisfied with this, but we think it was entitled to no more.

The judgment in No. 3796 will be reversed. That cause will be remanded, with a direction to overrule the motion for judgment on the pleadings, and to proceed further conformably to the principles herein stated.

The judgment in No. 3800 is affirmed, and that cause will be remanded. It is so ordered.

BICKLEY, C. J., and SADLER and HUDSPETH, JJ., concur.