WILLIAM G. ROBINSON & others vs. SECRETARY
OF ADMINISTRATION & others.[1]

Suffolk. September 17, 1981. — September 21, 1981.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Secretary of Administration. Motor Vehicle,* Inspection fee. *Regulation.
Administrative Law,* Regulation.

In an action challenging the validity of a regulation promulgated by the
Secretary of Administration which purported to establish at $4.00 the
fee for the semiannual inspection of motor vehicles and trailers pur-
suant to the Secretary's authority under St. 1980, c. 572, § 36, and to
require $1.25 of that fee to be remitted to the Registrar of Motor
Vehicles, the plaintiffs were not entitled to an injunction against en-
forcement of the regulation on the basis that the Commonwealth's por-
tion appeared to be in the nature of a tax rather than a fee intended to
defray costs where there was no showing that the $4.00 fee exceeded
the amount which might reasonably be treated as representing costs
recoverable on fee-setting principles, nor any showing that, to the ex-
tent the fee might be unrelated to the recovery of costs, it exceeded in
amount the range within the specific contemplation of the Legislature
when it vested the fee-setting power in the Secretary. [444-448]
A fiscal impact statement filed by the Secretary of Administration, which
provided detailed estimates of the revenue expected to be generated by
a regulation setting the fee for the semiannual inspection of motor
vehicles and trailers, complied with the requirements of G. L. c. 30A,
§ 5; it was not required that the statement disclose the use that would
be made of the portion of the fee which would be remitted to the Com-
monwealth. [448-449]
A declaration of emergency filed by the Secretary of Administration in
conjunction with a regulation setting the fee for the semiannual in-
spection of motor vehicles and trailers adequately set forth the reasons
why it was necessary that the regulation take effect before the expira-
tion of the twenty-one day notice and comment period required by
G. L. c. 30A § 3. [449-451]

[1] The plaintiffs are seventeen residents of Massachusetts who own
automobiles registered therein. The defendants are the Secretary of Ad-
ministration, the State Secretary, the Secretary of Public Safety, and the
Registrar of Motor Vehicles.

CIVIL ACTION commenced in the Superior Court Department on September 11, 1981.

An application for a preliminary injunction was heard by *Zobel, J.*

*Donald K. Stern,* Assistant Attorney General *(Stephen S. Ostrach,* Assistant Attorney General, with him) for the defendants.

*Thayer Fremont-Smith (Paul M. Stein* with him) for the plaintiffs.

ARMSTRONG, J. This is an appeal authorized by G. L. c. 231, § 118, second par., from a preliminary injunctive order entered on September 11, 1981, by a judge of the Superior Court. The order pertained to a regulation, 801 Code Mass. Regs. 4.01 (1981), promulgated by the Secretary of Administration on September 11, 1981, and filed with the State Secretary the same day, which purported to establish at $4 the fee for the semiannual safety inspection of motor vehicles and trailers mandated by G. L. c. 90, § 7A, as amended by St. 1980, c. 572, § 36, and to require $1.25 of that fee to be remitted to the Registrar of Motor Vehicles. The Superior Court ordered the enforcement of the regulation enjoined "insofar as [it] purports to set a fee exceeding $2.00 . . . ."

The regulation which is at issue replaced an identical regulation which had been filed with the State Secretary on August 26, 1981. The plaintiffs in this action had commenced an action challenging the validity of the earlier regulation. The same judge had rendered a decision on September 9, 1981, ruling that the earlier regulation was invalid due to the failures of the Secretary of Administration to have complied with the notice and comment provisions of G. L. c. 30A, § 3, and to have filed a fiscal impact statement as required by G. L. c. 30A, § 5. The judge ordered entry of a permanent injunction effective Monday, September 14, 1981, against enforcement of the earlier regulation. On September 11 the Secretary of Administration refiled the regulation, this time accompanied by a lengthy statement of the emergency purportedly justifying non-

compliance with the requirements of G. L. c. 30A, § 3, and by a detailed fiscal impact statement. The same day the plaintiffs commenced the present action challenging the validity of the replacement regulation. The judge heard the matter forthwith on the application for a preliminary injunction, which he allowed, ordering the injunction to take effect September 16, 1981.[2] The judge ruled that the emergency statement met statutory requirements and excused noncompliance with the twenty-one day prior notice and comment procedure established by G. L. c. 30A, § 3. The plaintiffs dispute that ruling. The judge also ruled, however, that the fiscal impact statement filed by the Secretary of Administration failed to comply with the requirements of G. L. c. 30A, § 5, in that it failed to disclose the use that would be made of the $1.25 portion of the fee which was to be remitted to the Commonwealth.[3] The judge also ruled that the Commonwealth's portion appeared to be in the nature of a tax intended for revenue-raising purposes rather than a fee intended to defray costs and that the levying of a tax lay beyond the power which might lawfully be delegated by the Legislature to an administrative officer.

---

[2] A single justice of this court, acting pursuant to G. L. c. 231, § 118, first par., allowed motions by the Commonwealth to stay the order of the Superior Court and to accelerate the entry and hearing of the appeal therefrom. A panel was convened by the Chief Justice, and on September 17, 1981, after hearing the appeal, the panel entered an order continuing in effect the stay ordered by the single justice.

[3] In relevant part, the judge's memorandum of decision, referring to the fiscal impact statement filed by the Secretary of Administration, stated: "[I]t fails to itemize the utilization of the Commonwealth's portion ($1.25) of each $4.00 fee. Thus a reader cannot determine the relation of the Commonwealth's intake to the expense associated with the inspection program. The Fiscal Effect Statement makes clear that the inspector will earn $.75 per inspection more than he did when the fee was $2.00. It does not, however, explain the distribution of the Commonwealth's share. For reasons that will shortly become apparent, a statement of the 'fiscal effect' of an inspection fee must present at least an outline of the Commonwealth's estimated use of the funds."

As written, the ordered preliminary injunction would have limited the fee that might be charged for an inspection to $2.00 but, perhaps through oversight, would not have set aside or otherwise affected the portion of the regulation which required that a part of that fee be remitted to the Commonwealth. The parties appear to have assumed that the injunction would have permitted the inspector to retain the entire $2.00 fee. On the view we take of the case, it is unnecessary to decide whether that assumption is correct.

The $2.00 fee had its origin in St. 1974, c. 766, § 1, which inserted that figure in the auto inspection statute, G. L. c. 90, § 7A. That provision was repealed by St. 1980, c. 572, § 36, which took effect either July 1, 1980,[4] or July 23, 1980,[5] and in its place the Secretary of Administration was given power and the duty to fix the fee annually. That power remained unexercised until the promulgation and re-promulgation of the regulation here in question. It seems indisputable that, if that regulation is invalid, there is no fee validly in effect for auto inspections[6] and, consequently, no

---

[4] The effective date according to St. 1980, c. 572, § 417.

[5] The date the Governor filed with the State Secretary an emergency declaration pursuant to art. 48 of the Amendments to the Constitution, The Referendum, I and II, so as to cause St. 1980, c. 572, to take effect before the ninety-day period specified by part I would expire.

[6] On September 15, 1980, the Executive Office for Administration and Finance issued an administrative bulletin which stated that "[t]he amounts of fees existing prior to the effective date . . . of . . . [St. 1980, c. 572] are to remain in force until reviewed by the Executive Office for Administration and Finance and changed by the Secretary of Administration in accordance with the provisions of Chapter 30A of the General Laws." It is well settled that a fee of general application, when fixed by administrative action, is in its nature a regulation, and depends for its validity upon compliance with the provisions of law (G. L. c. 30A, §§ 2, 3 and 5) relative to the promulgation of regulations. *Kneeland Liquor, Inc.* v. *Alcoholic Beverages Control Commn.*, 345 Mass. 228, 233-235 (1962). *Massachusetts Gen. Hosp.* v. *Cambridge*, 347 Mass. 519, 522 (1964). Compare *Associated Indus.* v. *Commissioner of Ins.*, 356 Mass. 279, 283-284 (1969). We are informed that there was no attempt to follow those procedures in issuing the bulletin. As to the permissible scope and efficacy of administrative bulletins, see *Massachusetts Gen. Hosp.* v. *Rate Setting Commn.*, 371 Mass. 705, 706-707 (1977).

legal basis for the $2.00 fee permitted under the judge's order.

The legislative history makes it clear that St. 1980, c. 572, which authorized the Secretary of Administration to fix literally hundreds of fees by regulation, was intended as a major revenue raising measure for the Commonwealth. In his budget message on January 23, 1980, the Governor had urged the Legislature to authorize massive increases in the State's revenue from fees and charges. 1980 House Doc. No. 1, at 5[7] and 8. On February 28, 1980, the Secretary of Administration, pursuant to G. L. c. 7, § 4, filed in the Legislature a bill (1980 House Doc. No. 5982) entitled "An Act authorizing the [secretary] of administration to set fees and charges paid to the commonwealth," which was the basis for the bill (1980 House Doc. No. 6662) which became St. 1980, c. 572. The accompanying message from the Secretary urged passage of the bill as a means of raising revenue,[8] and it seems clear that the Legislature, by including the fee for auto safety inspections in the legislation (§ 36) repealing the statutorily fixed fee and authorizing the Secretary to fix the fee annually intended thereby to authorize (1) an increase in the fee and (2) an increase in revenues to the Commonwealth. It is implicit in the legislative background that the intention of the Legislature was to enable the Secretary to require that all or a portion of the contemplated increase in the fee be paid to the Commonwealth. The subject of the legislation, as evidenced by its title, was "fees and charges paid to the commonwealth,"

---

[7] "[T]his budget also requests an increase of $33.6 million in those fees state government charges for services or licenses. Today Massachusetts charges less for these fees than 40 other states. So we ask that you correct this inequity and bring our fee schedule into line with that of other states." 1980 House Doc. No. 1, at 5.

[8] "It is my considered opinion that many fees and charges currently assessed for licenses granted or services rendered by the Commonwealth are set far below the cost of providing such services . . . . I also believe that the current procedure requiring the submission of legislation every year or two to change a majority of fees is unduly cumbersome and, further, leads to a loss of revenues to which the Commonwealth is legitimately entitled."

see *Board of Appeals of Hanover* v. *Housing Appeals Comm.,* 363 Mass. 339, 352-353 (1973), and this legislation, like any other, is to be construed, if at all possible, so as to carry out the dominant purpose of the Legislature in enacting it. *Board of Educ.* v. *Assessor of Worcester,* 368 Mass. 511, 513 (1975). *Registrar of Motor Vehicles* v. *Board of Appeal on Motor Vehicle Liab. Policies and Bonds,* 382 Mass. 580, 585 (1981). *Muir* v. *Leominster,* 2 Mass. App. Ct. 587, 595 (1974). Statute 1980, c. 572, § 36, can be construed, and, in accordance with the principle of the cited cases, must be construed, to authorize the Secretary to set the auto safety inspection fee at a level higher than the $2.00 fee previously in effect and to provide for a portion of that fee to be remitted to the Commonwealth. Our conclusion in this respect does not differ from that reached by the judge who ordered the preliminary injunction, who expressed the view that "[i]f this amount [i.e., the $1.25 to be remitted to the Commonwealth] covered, or somewhat exceeded, the Commonwealth's cost of administering the [auto safety inspection] program . . . the fee increase would be unobjectionable."

The plaintiffs, although not conceding that point, do not seem seriously to dispute it. Rather, they put the thrust of their argument on a contention that the $1.25 to be remitted to the Commonwealth is greater than any amount that might reasonably be justified as a fee, amounting instead to a tax unrelated to the costs of the Commonwealth in administering the auto safety inspection program. See *Opinion of the Justices,* 250 Mass. 591, 602-603 (1924), for the general distinction between fees and taxes. The contention ignores three important points. First, the Legislature itself has made a determination that, commencing January 1, 1982, the *minimum* auto safety inspection fee is to be four dollars. St. 1979, c. 761, § 2.[9] That fact is entitled to

---

[9] The 1979 legislation provided for a combined safety and emissions inspection for vehicles not exempted, those exempted still being subject to a safety inspection analogous to that now in effect. The fee for the safety

weight in determining the range of expectation that the Legislature must have had in mind when, the following year, it abolished the $2.00 fee and authorized the Secretary of Administration to set an increased fee. It can hardly be concluded that any fee within the $2.00 to $4.00 range lay outside the contemplation of the Legislature in authorizing the Secretary to fix the fee administratively. Second, the record before the Superior Court was entirely devoid of evidence to support the plaintiffs' assertion that the revenue to be produced by the $1.25 portion of the fee would exceed the costs that the Commonwealth might reasonably allocate to the auto safety program.[10] In this situation the judge applied what amounted in essence to a presumption of invalidity, contrary to the well settled principle that administrative regulations are entitled to "all rational presumptions in favor of the[ir] validity." *Levy* v. *Board of Registration*

---

inspection only is to be $4.00. The fee for the combined safety and emissions inspection is to be determined jointly by the Registrar of Motor Vehicles and the Commissioner of Environmental Quality Engineering in an amount not to exceed $10.00.

[10] Recognizing that deficiency in the appellate record, the plaintiffs furnished to this court an affidavit by a former Registrar of Motor Vehicles itemizing the costs that he feels should be allocated to the inspection program at $630,000 annually. On its face, the affidavit is inappropriately restrictive in listing items that might reasonably be found related to the program, confining its focus to the personnel of the Registry of Motor Vehicles who directly administer the inspection program and allocating no portion of the cost to other branches of the Registry or to other law enforcement agencies, such as the uniform branch of the State police; making no allocation of general administrative overhead of the Registry to the program; making no allocation of the cost of vehicles or other equipment; and apparently assuming that it would be improper for the Commonwealth to recover the entire cost of the Registry and a portion of the cost of all other highway related agencies and expenditures, including the cost of court proceedings, through the vehicle of fees for registering and inspecting motor vehicles and licensing drivers thereof. In this connection it should be observed that, under art. 78 of the Amendments to the Constitution, no portion of the proceeds of the $1.25 may be spent for other than highway, highway-safety, or mass-transportation related purposes. This is in sharp contrast to *Opinion of the Justices*, 250 Mass. 591, 597 (1925), where the court observed that the revenue from the excise there in question "is not to be applied to the maintenance and repair of highways but is to be retained by the several cities and towns without restriction."

*& Discipline in Medicine,* 378 Mass. 519, 525 (1979), quoting from *Consolidated Cigar Corp.* v. *Department of Pub. Health,* 372 Mass. 844, 855 (1977). Third, the plaintiffs' contention assumes incorrectly that the focus of judicial inquiry should be on the $1.25 portion of the fee to be paid to the Commonwealth, rather than on the reasonableness of the $4.00 fee in its entirety. The $4.00 fee, considered as a whole, bears an obvious relation to the cost of inspections, as the major portion of that fee, $2.75, goes directly and exclusively to compensating the persons who perform the inspections. An exact equivalence between the ancillary costs and the $1.25 portion is not required to sustain the validity of the $4.00 considered as a fee. *Opinion of the Justices,* 250 Mass. 591, 602 (1925). "A license fee may be exacted as a part of or incidental to regulations established in the exercise of the police power. Such a fee commonly is commensurate with the reasonable expenses incident to the licensing and all that can rationally be thought to be connected therewith. The amount of the fees in such connection doubtless would not be scrutinized too curiously even if some incidental revenue were obtained. *Hendrick* v. *Maryland,* 235 U.S. 610, 622 [1915]." *Id.* If the $4.00 fee is valid, the plaintiffs have no standing to question the split of that fee between the inspectors and the Commonwealth. The inspectors, who are the persons most directly concerned with the split, are not even parties to the instant litigation. To sum up, we are of the opinion that no showing has been made that $4.00 exceeds the amount which might reasonably be treated as representing costs recoverable on fee-setting principles, nor has any showing been made that, to the extent the $4.00 may prove to be unrelated to the recovery of costs, it exceeds in amount the range that was within the specific contemplation of the Legislature when it vested the fee-setting power in the Secretary of Administration.

There was no legal defect in the fiscal impact statement filed by the Secretary on September 11. It provided detailed estimates of the revenue expected to be generated by the fee for the Commonwealth and the inspectors during

the short period of time the regulation was to be in effect, based on the total number of vehicles to be inspected (estimated at 4,000,000). Nothing more was required by G. L. c. 30A, § 5. It is not the function of a fiscal impact statement to inform the public of the use that the Commonwealth will make of the money; nor could a rule-making officer normally presume to predict its use, given the constitutional requirements that moneys received by the Commonwealth are to be deposited in the State treasury and may not be spent except in accordance with an appropriation made by the Legislature, in this case limited to highway or mass transportation purposes. Arts. 63, § 1, and 78 of the Amendments to the Massachusetts Constitution. *Opinion of the Justices,* 302 Mass. 605, 612, 614 (1939). *Baker* v. *Commonwealth,* 312 Mass. 490, 493 (1942). Nor is it the function of a fiscal impact statement to lay out the legal or financial justification for a regulation or the rulemaker's subjective purpose in promulgating it.

The plaintiffs last challenge the declaration filed by the Secretary on September 11 which stated his reasons why it was necessary for the regulation to take effect without waiting for the expiration of the twenty-one day notice and comment period usually required for the promulgation of regulations under G. L. c. 30A, § 3. The simple reason was that, if the regulation did not become effective immediately, the September 1 to October 15 semiannual inspection period would have nearly passed and the Commonwealth would have lost the additional revenue irretrievably. He made additional points: that many inspection stations were threatening to cease participation in the inspection program due to what they regarded as the inadequacy of the $2.00 fee; that the integrity of the program and the safety of the highways were thereby threatened; and, in addition, that the Commonwealth needed the additional revenue implicitly authorized from this source by St. 1980, c. 572, § 36. He emphasized a point that the inspectors' dissatisfaction with the $2.00 fee was exacerbated in August, 1981, because there had been suggestions that month that the legislation

increasing fees in 1982 might be delayed in its implementation. As the judge ruled, the Secretary's conclusion is given every presumption in its favor and is not subject to question in judicial proceedings unless palpably wrong. *Prescott* v. *Secretary of the Commonwealth*, 299 Mass. 191, 203 (1938). The judge ruled, and we agree, that the declaration was adequate to meet the requirements of the State Administrative Procedure Act.

The basis of the plaintiffs' contention on this point seems to be that the Secretary should have anticipated the need for a higher fee earlier and not waited until it was too late to follow the twenty-one day waiting period. The Secretary is not to be held to a standard of perfection, but merely to a standard of good faith. If delay is intended as a subterfuge to evade notice, hearing, or comment requirements of the Act, the courts may look behind an emergency statement. See *Pioneer Liquor Mart., Inc.* v. *Alcoholic Beverages Control Commn.*, 350 Mass. 1 (1965). Mere oversight or neglect would not justify a court in delaying the effective date of a regulation intended for the benefit of the public solely for the sake of punishing neglectful officers. More importantly in this case, the plaintiffs ask us to give no efficacy to, in effect to disbelieve, the Secretary's statement that the need to raise the inspectors' portion of the fee became urgent due to changed circumstances in August, 1981. Following *Molesworth* v. *Secretary of the Commonwealth*, 347 Mass. 47, 59 (1964), we decline to do so.

The *Pioneer Liquor Mart* case is especially instructive in a respect not hitherto mentioned. In that case the commission had promulgated price regulations and filed a declaration to the effect that, unless it promulgated regulations for the period in question on an emergency basis, there would be no regulation in effect and the legislative intent would be frustrated. The court took judicial notice that, several months before the price period in question, it had rendered a decision, *Kneeland Liquor, Inc.* v. *Alcoholic Beverages Control Commn.*, 345 Mass. 228 (1962), which had invalidated similar regulations of the commission for failure to follow

the regulation-making procedures of the State Administrative Procedure Act. The Secretary was here faced with a somewhat comparable emergency: that, due to the judicial invalidation of his August 26 regulation, there would be no regulation in effect unless promulgated on an emergency basis. More important, it is now clear, as it was not prior to the hearing of this appeal, that until the regulation in question was promulgated there was no fee validly in effect; and it is equally clear that, unless the inspectors are authorized to collect a fee, the inspection program will be thrown into chaos. These are legal facts of which we can take judicial notice, and which would fully justify promulgation of a fee on an emergency basis. Compare *Sears* v. *Secretary of the Commonwealth*, 369 Mass. 392, 405 (1975). It cannot be doubted that if the injunction were allowed to stand solely by reason of an omission in the emergency statement, the Secretary would promptly refile the regulation with the omission corrected. Where the exigency is obvious, no purpose would be served by requiring a refinement in the filed declaration.

On the basis of the foregoing considerations, we find no legal basis for the issuance of the preliminary injunction. The burden of showing a likelihood of success on the merits is on the party seeking the preliminary injunction. *Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. 609, 620 (1980). That burden has not been met.

The order for a preliminary injunction entered on September 11, 1981, is vacated. The rescript is to issue forthwith.

*So ordered.*