BOND LIQUOR STORE, INC. *vs.* ALCOHOLIC BEVERAGES
CONTROL COMMISSION.

Suffolk.     January 9, 1957. — May 10, 1957.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, &
CUTTER, JJ.

*Alcoholic Liquors*, Price fixing.   *Statute*, Repeal.   *Fair Trade Law.*

G. L. (Ter. Ed.) c. 138, § 23A, as appearing in St. 1950, c. 780, was re-
pealed by implication by the enactment of § 25C, inserted in c. 138
by St. 1952, c. 385, and c. 567, § 1; and a purported suspension of a
license by the alcoholic beverages control commission under § 23A
by reason of a certain sale of whiskey by the licensee after the effective
date of § 25C must be quashed on certiorari.

PETITION for a writ of certiorari, filed in the Superior
Court on December 19, 1952.

The case was heard by *Morton*, J.

*Stanley S. Ganz*, (*Herbert D. Lewis* with him,) for the
petitioner.

*John F. X. Gaquin*, for the interveners.

*Joseph H. Elcock, Jr.*, Assistant Attorney General, for the
respondent.

WHITTEMORE, J.   This is an appeal from an order for
judgment in the Superior Court to dismiss a petition for a
writ of certiorari.   G. L. (Ter. Ed.) c. 231, § 96.   *Mayor
of Beverly* v. *First District Court of Essex*, 327 Mass. 56,
58.

The writ was sought in order to quash the action of the
alcoholic beverages control commission (hereinafter, the
commission), under G. L. (Ter. Ed.) c. 138, § 23A, inserted
by St. 1945, c. 215, as amended by St. 1950, c. 780, in sus-
pending for six days in December, 1952, after notice and
hearing, the petitioner's license to sell alcoholic beverages
for violation of G. L. (Ter. Ed.) c. 93, §§ 14A–14K.   Sec-

tions 14A to 14C, inclusive, constitute the so called "Fair Trade Law" and §§ 14E to 14K are the "Unfair Sales Act."

There was evidence before the commission of the sale on November 25, 1952, of two "fifths" of whiskey at below the fair trade price as fixed by a contract to which the petitioner was not a party (c. 93, § 14B, inserted by St. 1937, c. 398, as amended by St. 1939, c. 313). The commission acted on the complaint of Massachusetts Package Stores Association, Inc., and John Gilbert, Jr., Co., who were allowed to intervene in this case.

The case is not moot for, pursuant to stipulation, the temporary restraining order entered in the Superior Court was continued pending final determination of the case, with the proviso that the suspension would take effect thereafter if the order of the commission should be affirmed.

The State administrative procedure act (G. L. [Ter. Ed.] c. 30A) took effect July 1, 1955, and did not apply to the proceedings in this case at any stage. St. 1954, c. 681, § 22.

The order for dismissal of the petition was error.

The policy of the Commonwealth on November 25, 1952, in respect of control of the sale prices of alcoholic beverages is to be found in the preamble of St. 1945, c. 215, which inserted c. 138, § 23A, and such modification of the policy there stated as resulted from the enactment of St. 1952, c. 385, discussed below. The preamble of St. 1945, c. 215, reads as follows: "Whereas, The practice of price cutting and loss-leader selling, so-called, results in unfair competition and other trade abuses; and Whereas, Such practice results in creating undue stimulation of sales of alcoholic beverages and contributes to a disorderly distribution and sale of alcoholic beverages and is detrimental to the proper regulation of the sale of alcoholic beverages; Therefore, It is hereby declared to be against the public welfare and public policy of the commonwealth to permit price cutting and loss-leader selling, so-called, in connection with the sale of alcoholic beverages in the commonwealth."

From the enactment of St. 1945, c. 215, until August 29,

1952, this policy was implemented only in the provisions of § 23A[1] of c. 138, which that statute inserted, requiring that the commission suspend a license or permit for stated periods for first, second and subsequent offences whenever it found a violation of any of the provisions of either the fair trade law or the unfair sales act.

The relevant provisions of the fair trade law are found in § 14B providing a forfeit of $50 through civil process for "Wilfully and knowingly" making sales or offerings below a fair trade price. The relevant provisions of the unfair sales act are in § 14F providing criminal penalties for certain sales below cost.

On May 21, 1951, the case of *Schwegmann Brothers* v. *Calvert Distillers Corp.* 341 U. S. 384, was decided, holding that the Miller-Tydings act, U. S. C. (1946 ed.) Title 15, § 1, did not exempt from the Sherman act contracts or agreements which prescribe the minimum resale price for non-contracting competitors of retailers who had signed such contracts, notwithstanding a State statute similar to G. L. (Ter. Ed.) c. 93, § 14B, which in terms made fair trade contracts applicable to nonsigners. This virtually destroyed for the time the effectiveness of § 23A as a regulation of the liquor traffic,[2] although it did not wipe it out as an existing statute, *General Electric Co.* v. *Kimball Jewelers, Inc.* 333 Mass. 665, 678, and doubtless led to the introduction in the next Legislature of the bill which became St. 1952, c. 385, enacted May 31, 1952.

---

[1] As amended by St. 1950, c. 780, this section reads: "Whenever the commission makes a finding that a holder of a license or permit issued under this chapter has violated any of the provisions of sections fourteen A to fourteen K, inclusive, of chapter ninety-three, the commission, for the first violation shall suspend such license or permit for a period of six days and shall, for the second violation, suspend such license or permit for a period of fifteen days, and shall, for the third and subsequent violation, suspend such license or permit for a period of thirty days. The commission may determine whether such a violation has taken place upon evidence secured by its own inspectors, investigators or agents, or from evidence submitted to it by any person or trade organization, or both." As inserted by St. 1945, c. 215, the penalties were: first and second violations, suspensions of thirty and ninety days respectively; third violation revocation of license or permit.

[2] The McGuire act (U. S. C. [1952 ed.] Title 15, § 45) which avoided the *Schwegmann* decision was enacted July 14, 1952.

The new statute[1] took effect August 29, 1952. It provides for a significantly different regulation of liquor prices. This statute (c. 138, § 25C) applies to all alcoholic beverages other than malt beverages, prohibits the sale of all such beverages until after the commission has approved the filed minimum prices therefor as not being excessive, inadequate or unfairly discriminatory, and provides that no licensee shall sell or offer at less than the minimum price then in effect unless pursuant to written permission of the commission. There is a material difference in the penalties from those provided in § 23A.

1. It is urged that § 23A is unconstitutional, apart from the effect of § 25C, on several grounds including the following: (1) there is an improper delegation to distributors of alcoholic beverages of the power to determine, by the making or nonmaking of fair trade contracts, whether and to what extent the policy of the Commonwealth takes effect (see *Levine v. O'Connell,* 275 App. Div. [N. Y.] 217, affirmed 300 N. Y. 658; contra *Gaine v. Burnett,* 122 N. J. L. 39, affirmed on opinion below 123 N. J. L. 317, *Reeves v. Simons,* 289 Ky. 793); (2) its effectiveness is conjectural as it depends upon the extent to which the trade generally has resort to fair trade contracts (see *Schwegmann Brothers v. Louisiana Board of Alcoholic Beverage Control,* 216 La. 148); and (3) it is a support of a restraint of trade of a kind not

---

[1] General Laws (Ter. Ed.) c. 138, § 25C, inserted by St. 1952, c. 385, and c. 567, § 1, provides, "(a) No brand of alcoholic beverages shall be sold . . . to a wholesaler or retailer, and no manufacturer or wholesaler shall sell . . . [and so forth] any [labelled, branded] alcoholic beverages . . . unless a schedule of minimum consumer prices . . . shall first have been filed with the commission and is then in effect. . . . (d) . . . No such filing . . . shall take effect unless within thirty days thereafter the commission has approved the said prices as not being excessive, inadequate, or unfairly discriminatory. . . . (f) No licensee authorized to sell alcoholic beverages at retail for off-premises consumption shall sell . . . [and so forth] any alcoholic beverages at a price less than the minimum consumer resale price then in effect, unless written permission of the commission is granted for good cause shown and for reasons not inconsistent with the purposes of this section and under such terms and conditions as the commission deems necessary. (g) . . . For the violation of any provision of this section or any rule or regulation duly promulgated under this section, the commission may suspend a license as follows: — for a first offence, not exceeding six days suspension of license; for a second offence, not exceeding fifteen days suspension of license; and for each subsequent offence, thirty days suspension of license. . . . For the purpose of this section alcoholic beverages shall not include malt beverages."

within the exception which the McGuire act creates to the general policy against restraint of trade. (See *Schwegmann Brothers* v. *Calvert Distillers Corp.* 341 U. S. 384, 386; U. S. C. [1952 ed.] Title 15, § 45 [a] [2] [5].) As to delegation under our Constitution see *Scannell* v. *State Ballot Law Commission*, 324 Mass. 494, 501; *Opinion of the Justices*, 330 Mass. 713, 719; *Commonwealth* v. *Hudson*, 315 Mass. 335, 341; *Opinion of the Justices*, 239 Mass. 606. And see *J. W. Hampton, Jr., & Co.* v. *United States*, 276 U. S. 394, 406–407; *Panama Refining Co.* v. *Ryan*, 293 U. S. 388, 420–430; *A. L. A. Schechter Poultry Corp.* v. *United States*, 295 U. S. 495, 530, 537; *United States* v. *Rock Royal Co-operative, Inc.* 307 U. S. 533, 577; *Nilva* v. *United States*, 212 Fed. (2d) 115, 119–120. We do not reach these points.

2. The scope of the new section, 25C, which is constitutional, *Supreme Malt Products Co. Inc.* v. *Alcoholic Beverages Control Commission*, 334 Mass. 59, 61–62, is such as to suggest strongly an intention "to cover the whole subject to which it relates." *Homer* v. *Fall River*, 326 Mass. 673, 676. Beyond this, the application of § 23A to sales to which § 25C also in terms applies would be so arbitrary and unreasonable, in aspects which we discuss in the following paragraphs, as to show inconsistency and repugnance in their respective provisions. In the circumstances we hold that § 23A has been repealed by necessary implication. *Commonwealth* v. *Bloomberg*, 302 Mass. 349, 352–354. *Homer* v. *Fall River*, 326 Mass. 673, 676–677, and cases cited.

3. If a wholesaler posts a price under § 25C which is a fair trade price and the commission approves it there is at once identity of price under both provisions. If the commission disapproves, because the price is too low, the stated minimum price must be brought up to one which the commission will approve, and the fair trade price will have to be brought up at least to that price or the item may not be sold in Massachusetts. No express provision, however, purports to bar a wholesaler and retailer from making a fair trade contract for a minimum price higher than that which the

commission has been willing to approve under § 25C. That licensees, subject in many aspects of their businesses to the regulation and control of the commission, would be unlikely to attempt to set minimum fair trade prices above those which the commission had approved under § 25C, or apart from this would be unlikely to find any business advantage in doing so, is of course manifest, but the possibility of such action is relevant.[1]

To reconcile § 23A and § 25C in this respect, it could perhaps be said that the policy of the Commonwealth is served by any restriction which tends to raise price and discourage consumption and that the "price cutting" which St. 1945, c. 215, declares to result in "undue stimulation of sales" is any reduction below a fair trade price even though, because of the operation of § 25C, such reduction cannot have any material aspect of competition or unfair competition. We do not think this is the intendment of the Commonwealth's policy as it stands after the enactment of § 25C which requires the commission's approval of every price. The power in the commission to disapprove a filed price as excessive is recognition that a price set by the trade without approval may be unreasonably high. The commission's power over all prices is an effective assurance against "unfair competition" and "loss-leader selling" (St. 1945, c. 215, preamble) and in operation must put a full stop to "price cutting" as a competitive manœuver.

In any event we think it would not be reasonable regulation of the liquor traffic under the declared policy to impose a penalty under § 23A for a sale which is below a fair trade price, fixed only by the trade without notice, hearing or approval, but which is not below the price which the commission in required regulation of that traffic has approved, after notice and hearing, as "not being excessive, inadequate, or unfairly discriminatory." If the implication of § 25C is that a sale at a price above a commission approved

[1] We assume that a sale below cost in violation of the unfair sales act would in every case be below a price approved under § 25C so that the point discussed in this paragraph does not arise with respect to § 23A as applied to the unfair sales act.

price is contrary to public policy because "excessive," that is a further indication of implied repeal of § 23A.

The difference in the penalty provisions between § 23A and § 25C emphasizes the unreasonableness and arbitrariness of § 23A in operation. By the express provisions of the statute, if a retailer sells below the price approved by the commission, the commission under § 25C *may suspend* the license as follows: for the first and second offences, *for any number of days not exceeding* six and fifteen respectively, and for subsequent offences thirty days.[1] But if it happens that the sale violates the fair trade law, or the unfair sales act, and the commission so finds, it has no discretion; it *must suspend* the license for six days (first offence), fifteen days (second offence) and thirty days (subsequent offences). We do not pause to determine whether the words "may suspend" in § 25C are to be construed with the force of "shall suspend" in order to overcome the inconsistency otherwise resulting and because the Legislature should be understood to have intended some penalty. See *Attleboro Trust Co.* v. *Commissioner of Corporations & Taxation*, 257 Mass. 43, 51; *Commonwealth* v. *Mekelburg*, 235 Mass. 383, 384–385; *Cline* v. *Cline*, 329 Mass. 649, 652; *Assessors of Springfield* v. *New England Telephone & Telegraph Co.* 330 Mass. 198, 201, and cases cited. We deem it in any event not reasonable to say that "not exceeding six days [or fifteen days] suspension" can be construed to mean that the penalty must be six days, or fifteen days, and no less. The meaning of the penalty provision of § 23A cannot be affected by the enactment of the later statute and there is no sound basis for concluding that the penalties under § 23A, which as first imposed included in terms a mandatory revocation of the license for a third offence, were intended to be permissive in application, or that the length of the suspensions was intended to be in the discretion of the commission up to the stated period as a maximum.

---

[1] It is not necessary to determine in this case whether a discretion as to the number of days of suspension up to thirty is implied from the two earlier clauses, though not expressed.

Conceivably a statutory provision for a slightly more severe penalty for certain sales could mean more effective regulation of the liquor traffic. That is at best conjectural here especially as a material inducement to the general use of fair trade contracts for liquor pricing has been removed by § 25C. It is in any event irrelevant for such a consideration cannot make reasonable an otherwise irrational and an arbitrary statute. It is manifestly an arbitrary and capricious way of regulating the liquor traffic to impose a more severe penalty for a sale below the price approved by the commission, only because the sale also violates the trade laws. The unreasonableness of such a penalty is emphasized where the sale violates the trade laws but is not at a price below that approved under § 25C.

It is unimportant that the difference in penalty is not great or that an enforcing policy might be uniform under the two acts. This is not required and the difference between the statutes establishes the irrational aspect of § 23A in the light of § 25C.

The probable additional time and cost involved in defending under § 23A the more elaborate case for violation of the trade laws adds an additional aspect of inequality and unreasonableness.

The unreasonable and arbitrary aspects of the enforcement of § 23A in the light of § 25C are such as would raise a question of its constitutionality in application, see *Sperry & Hutchinson Co.* v. *Director of the Division on the Necessaries of Life,* 307 Mass. 408, 418–420; *Opinion of the Justices,* 247 Mass. 589, 595–596, but we do not reach the point, in view of our holding that § 23A has been repealed by implication.

4. We have not overlooked the fact that by its last sentence § 25C does not apply to malt beverages. We think that the intention to occupy the entire field of price control in the liquor industry is reasonably manifested by § 25C, in all the circumstances, and that § 23A does not remain in effect as a means of regulating traffic in malt beverages. The policy stated in the preamble of St. 1945, c. 215, has been modified by the last sentence of § 25C.

5. The respondents do not undertake to sustain § 23A as a general trade regulation only. It is unnecessary to discuss the objections to it as such beyond noting that if it is not supported as a regulation of the liquor industry no basis is shown for singling out of general trade only one class to be subjected to the particular penalty.

6. The order for judgment is reversed. Judgment is to enter in the Superior Court quashing the order of the commission which directed the suspension of the petitioner's license.

*So ordered.*