PIONEER LIQUOR MART, INC. *vs.* ALCOHOLIC BEVERAGES
CONTROL COMMISSION
(and two companion cases[1]).

Suffolk.    November 2, 3, 1965. — December 16, 1965.

Present: SPALDING, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Alcoholic Liquors,* Schedule of minimum consumer prices, Alcoholic Beverages Control Commission. *State Administrative Procedure Act. Regulation. Statute,* Retroactive statute.

A filing with the Alcoholic Beverages Control Commission of a schedule of minimum consumer prices for a brand of liquor by a licensed wholesaler who did not sell that brand in Massachusetts was proper, in the absence of a filing by the owner of the brand, as a filing "with the approval of the commission" within G. L. c. 138, § 25C (c) (3), where the commission accepted the filing and subsequently approved the schedule. [5-6]
Where it appeared that the Alcoholic Beverages Control Commission, before the amendment of G. L. c. 138, § 25C (d), by St. 1963, c. 258, and soon after a decision by this court that approval by the commission of a filed schedule of minimum consumer prices for liquor under (d) con-

---

[1] J. Gandolfo, Inc. *vs.* Alcoholic Beverages Control Commission and Orlandella Grocery Company, Inc. *vs.* Alcoholic Beverages Control Commission. These cases were argued with White's Liquor Mart, Inc. *vs.* Alcoholic Beverages Control Commission (and two companion cases), *post,* 11, decided this day.

stituted adoption of a regulation within the State Administrative Procedure Act, G. L. c. 30A, took action approving a schedule for two specified months as an "emergency" regulation without notice or hearing on the stated grounds that there was "insufficient time in this instance" to comply with the notice and hearing requirements of c. 30A and that it was "contrary to the public interest" not to establish minimum prices for the two months, such "emergency" action, taken in the situation resulting from this court's decision, could not be said to be without sufficient basis or invalid, whether it was taken under c. 30A, § 2 (3) or § 3 (3). [8–10]

St. 1963, c. 258, amending G. L. c. 138, § 25C (d), did not apply retroactively to action taken by the Alcoholic Beverages Control Commission before its effective date approving a schedule of minimum consumer prices for liquor. [10]

THREE PETITIONS, filed in the Superior Court on August 28 and August 29, 1963, for review of decisions of the respondent commission.

The petitioners appealed from decrees affirming the decisions, entered after hearing by *Sullivan*, J.

*Julius H. Soble* for Pioneer Liquor Mart, Inc. & another.

*James W. Kelleher* for Orlandella Grocery Company, Inc.

*David Lee Turner*, Assistant Attorney General, for the Alcoholic Beverages Control Commission.

CUTTER, J. Pioneer Liquor Mart, Inc. (Pioneer) operates a licensed retail liquor package goods store in Mattapan. It was charged by the commission with violation of G. L. c. 138, § 25C (see St. 1952, c. 385, and c. 567, § 1[2]), in

---

[2] Section 25C, as it existed prior to St. 1963, c. 258, and St. 1965, c. 428 (rewriting par. [c]), is set forth below. Chapter 258 amended par. (d) by striking out the italicized words and adding the bracketed words shown below in the sentence immediately following the bracketed letter [A] (inserted for convenient reference). "Section 25C. (a) No brand of alcoholic beverages shall be sold within the commonwealth to a wholesaler or retailer, and no manufacturer or wholesaler shall sell . . . any alcoholic beverages, the container of which bears a label stating the brand or the name of the owner or producer, unless a schedule of minimum consumer prices for each such brand of . . . beverages shall first have been filed with the commission and is then in effect. (b) *Each of the schedules . . . shall contain, with respect to each item . . . the minimum consumer resale price of a bottle and of a case . . . which prices shall be uniform throughout the commonwealth.* (c) Such schedule shall be filed by (1) the manufacturer or wholesaler who owns such brand, if licensed by the commission; or (2) a wholesaler selling such brand who is appointed in writing by the brand owner as exclusive agent for the purpose of filing such schedule, *if the brand owner is not licensed by the commission;* or (3) any wholesaler, with the approval of the commission, in the event that

selling an alcoholic beverage[3] at a price less than the minimum consumer resale price therefor. Upon an order to show cause why Pioneer's license should not be suspended or revoked, a hearing was held before the commission on April 30, 1963.

On August 1, 1963, the commission by letter notified Pioneer of its findings (see fn. 3) and that its license would be suspended for six days. On August 29, 1963, Pioneer filed in the Superior Court a petition under G. L. c. 30A, § 14, for review of the board's decision. The following facts, alleged in the petition, were stipulated: Distillers Products Sales Corporation (Distillers), the filer of the schedules for minimum consumer resale prices including the price for the alcoholic beverage allegedly improperly sold,[4] notwithstanding that it was fully authorized under its wholesaler's license to do so, did not have in Massachusetts (as of the time of the hearing and during 1963) either

---

the owner of such brand does not file or is unable to file a schedule or designate an agent for such purpose. (d) . . . [S]chedules shall be filed at the times and for the periods hereinafter set forth and shall be effective during the periods hereinafter set forth: — [subject to provisos not here relevant. Filings were to be in the first ten days of July, September, November, January, March, and May, to become effective for two months on the first day of the second month following such filing] . . . . [A] No such filing, however, shall take effect unless within thirty days thereafter the commission *has approved the said* [shall approve such] prices as not being excessive, inadequate, or unfairly discriminatory [provided, however, that such approval shall not be deemed a rule or regulation within the meaning of section twenty-four or section seventy-one, nor shall such approval be subject to the provisions of chapter thirty A]. (e) Within ten days after the filing of each such schedule the commission shall make it . . . available for inspection by licensees. All such schedules so filed shall be subject to public inspection from the time that they are required to be made available for inspection by licensees. . . . (f) No licensee authorized to sell alcoholic beverages at retail for off-premises consumption shall sell . . . any alcoholic beverages at a price less than the minimum consumer resale price then in effect, unless written permission of the commission is granted . . . . (g) . . . For the violation of any provision of this section, or any rule or regulation duly promulgated under this section, the commission may suspend a license as follows: — for a first offence, not exceeding six days suspension of license . . . .''

[3] The commission found that one of its investigators purchased from Pioneer, for $3.95 on March 23, 1963, a bottle of brand name whiskey which had a minimum consumer resale price of $4.85 for March and April, 1963, approved by the commission in the manner set forth in the text of this opinion.

[4] An exhibit attached to the commission's return shows that the manufacturer of this brand beverage by letter to the commission had on September 4, 1952, appointed Distillers its agent ''for the purpose of filing [m]inimum [c]onsumer [r]esale [p]rices with you'' for the brand.

any warehouse or any inventory of alcoholic beverages. Distillers made no sales in Massachusetts.

It appears that the commission did not hold a public hearing preceded by any notice prior to its purported approval of the minimum consumer resale prices for March and April, 1963. On February 7, 1963, the commission adopted two votes, (1) to approve certain price schedules for the months of March and April as not being excessive, inadequate, or unfairly discriminatory, and (2) that the foregoing vote and regulation be declared an "emergency" regulation so that it would "become effective without conformance with the notice and public hearing requirements of" G. L. c. 30A, "there being insufficient time in this instance for the [c]ommission to comply and it being contrary to the public interest to allow the months of March and April to pass without the establishment of legal and proper [m]inimum [c]onsumer [r]esale [p]rices as authorized by" § 25C.[5]  On February 14, 1963, the Governor and Council "voted to approve the [s]chedule of [m]inimum [c]onsumer [r]esale [p]rice[s]" which had been submitted to them by the commission on February 7, 1963. On February 25, 1963, the commission wrote to the filers of price schedules advising them of the commission's action "(1) in the absence of any information to the effect that the . . . prices are . . . 'excessive, inadequate, or unfairly discriminatory' . . . [see § 25C (d)] and (2) upon your continuing assurance that this is the fact."

By motion to dismiss and requests for rulings filed with the commission, Pioneer attempted in connection with the hearing on the alleged violation to raise two principal issues: (1) whether the regulation as it applied to the particular branded beverage was invalid because the minimum price schedule was filed by Distillers, which was not a "whole-

---

[5] The second vote went on to say that the "emergency shall not continue beyond . . . April 30, 1963, but it is found to exist throughout the period in order 'to promote temperance, to stabilize the business, to avoid price wars, to instill observance of the law, and to protect the public.'" The vote then referred to *Kneeland Liquor, Inc.* v. *Alcoholic Beverages Control Commn.* 345 Mass. 228.

saler selling such brand,'' under c. 138, § 25C (c) (2), see fn. 2; and (2) whether the whole March-April price schedule was valid at all, in view of its approval by the commission, purporting to act under the ''emergency'' provisions of G. L. c. 30A, § 2 (3) or § 3 (3),[6] without prior notice and public hearing. The commission denied the motion to dismiss and the requests for rulings. A judge of the Superior Court ruled that no constitutional provisions were violated, that the commission did not commit error of law, that its procedures were not unlawful, and that its decision was not ''unsupported by substantial evidence.'' By final decree, the commission's decision was affirmed. Pioneer appealed.

1. The price schedule for the particular branded beverage was filed by a person (see *Kneeland Liquor, Inc.* v. *Alcoholic Beverages Control Commn.* 345 Mass. 228, 232) who could properly make such a filing under G. L. c. 138, § 25C (c), see fn. 2. The stipulations established that Distillers did not come within either clause (1) or clause (2) of par. (c). Distillers, however, was within clause (3) permitting a filing by ''any wholesaler, with the approval of the commission, in the event that the owner of such brand does not file.'' The owner of the brand did not file. The commission's acceptance of the filing made by Distillers, a

[6] Section 2 provides, ''Prior to the adoption . . . of any regulation as to which a hearing is required by any law, or any other regulation the violation of which is punishable by fine or imprisonment except a regulation of agency practice or procedure, an agency shall give notice and hold a public hearing, as follows: . . . [Paragraph (1) provides in detail for notice.] (2) The public hearing shall comply with any requirements imposed by law, but shall not be subject to the provisions of this chapter governing adjudicatory proceedings. (3) If the agency finds that immediate adoption . . . of a regulation is necessary for the preservation of the public health, safety or general welfare, and that observance of the requirements of notice and public hearing would be contrary to the public interest, the agency may dispense with such requirements and adopt the regulation . . . as an emergency regulation . . . . The agency's finding *and a brief statement of the reasons for its finding* shall be incorporated in the emergency regulation . . . as filed with the state secretary under . . . [c. 30, § 37]. An emergency regulation . . . shall not remain in effect for longer than three months unless during that time the agency gives notice and holds a public hearing . . . and files notice of compliance with the state secretary. This section does not relieve any agency from compliance with any law requiring that its regulations be approved by designated persons or bodies before they become effective'' (emphasis supplied). Section 3 deals with regulations other than those subject to § 2, and par. (3) permits dispensing, in certain cases, with any prior opportunity to present views about such a proposed regulation. The use of § 3 (3), however, is not confined to ''emergency'' situations.

licensed wholesaler, and the commission's subsequent approval of the filed price constituted sufficient "approval of the commission" in respect of the filing itself.

2. In *Kneeland Liquor, Inc.* v. *Alcoholic Beverages Control Commn.* 345 Mass. 228, among other things this court (1) held (p. 233) that the commission's approval of minimum price schedules under § 25C constitutes a "regulation" under G. L. c. 30A, § 1 (5).; and (2) rejected (p. 234) the commission's contention that package store dealers, when charged with a violation of an "approved" minimum price schedule, are "estopped from raising the issue of the denial of hearing" on the schedule by "not insisting upon the right to be heard." Without deciding whether commission action to avoid a hearing could have been taken under either c. 30A, § 2 (3) or § 3 (3), see fn. 6, the *Kneeland* case (p. 235) determined that, since there had been neither a hearing nor "emergency" action under § 2 (3) or § 3 (3), "the regulations [of which a violation was there alleged] were invalidly enacted and there was no legally established minimum sale price."

Although "emergency" action to avoid a hearing was attempted by the commission in the present cases, we still need not deal with the question left undecided in the *Kneeland* case, viz. whether the approved schedule now before us was a regulation of the type described in § 2 or one within the ambit of § 3. The commission took emergency action which, if it was valid, would be adequate whether the price schedule was a regulation of the type described in § 2, or one of the type described in § 3. We thus need not determine (1) whether this is the type of regulation a violation of which may be punished under G. L. c. 138, § 62 (as amended through St. 1935, c. 440, § 39) by a fine or imprisonment (see c. 30A, § 2), or (2) whether the schedule was a regulation as to which a hearing was "required by any law," or by constitutional requirement for a hearing. See discussion in *Milligan* v. *Board of Registration in Pharmacy,* 348 Mass. 491, 495–499, and Davis, Administrative Law Treatise, §§ 7.01, 7.06, 7.07 (and 1965 pocket parts).

The question whether, under c. 30A, § 2 (3), a hearing can be avoided by the commission or whether, under c. 30A, § 3 (3), an opportunity to present views may be avoided must be considered in the light of c. 138, § 25C (d), making it necessary for the commission to determine that the prices approved by it are "not . . . excessive, inadequate, or unfairly discriminatory." This provision is a statutory standard similar to standards which are applicable to the administrative fixing of rates for various services affected with a public interest; e.g. motor vehicle liability insurance, *Massachusetts Bonding & Ins. Co.* v. *Commissioner of Ins.* 329 Mass. 265, 270 ("adequate, just, reasonable and non-discriminatory . . . charges," G. L. c. 175, § 113B, as amended); medical insurance, *Massachusetts Medical Serv.* v. *Commissioner of Ins.* 344 Mass. 335, 338–340 (rates may not be "excessive, inadequate or unfairly discriminatory," G. L. c. 176B, § 4, as amended); *S. C.* 346 Mass. 346. See also, as to certain public utility rates and practices; G. L. c. 164, §§ 93, 94; *Boston Consol. Gas Co.* v. *Department of Pub. Util.* 321 Mass. 259, 267–268;[7] *Boston Real Estate Bd.* v. *Department of Pub. Util.* 334 Mass. 477, 495 (implicit standard of "public interest"). Even apart from c. 30A, the standard of approval prescribed by § 25C (d) seems to presuppose the existence of substantial evidence[8] upon the

---

[7] There is no present occasion to determine whether § 25C (d) requires any "adjudicatory" action by the commission because it relates to approval of the minimum price to be charged for a period of two months for each specified branded beverage of a particular manufacturer. See G. L. c. 30A, § 1 (1); *Salisbury Water Supply Co.* v. *Department of Pub. Util.* 344 Mass. 716, 718 (rate hearings for this single company "adjudicatory" under G. L. c. 30A). Cf. Curran and Sacks, The Massachusetts Administrative Procedure Act (hereinafter cited Curran and Sacks, op. cit.), 37 B. U. L. Rev. 70, 77–84, 85–88; 1954 Ann. Surv. Mass. Law, § 14.3, p. 128n, and § 14.8. See also Davis, Administrative Law Treatise, §§ 7.06–7.08.

[8] Evidence or information might be relevant, inter alia, with respect to such matters as the direct and indirect expenses reasonably entering into the costs incurred by ordinarily efficient retailers; the prices at which particular branded beverages sell in adjacent and other States, sometimes in circumstances of free or less regulated competition; the various conditions within the Commonwealth affecting particular aspects of controlling beverage prices; the reasonableness of manufacturer's and wholesaler's prices and costs and their effect upon retail prices paid by the ultimate consumer; and the fairness of the beverage prices paid by the public.

basis of which approval may be justified. Such evidence would be obtained most readily by the commission through a hearing at which the evidence may be placed in the record, if, indeed, such a hearing is not essential. See *American Employers' Ins. Co.* v. *Commissioner of Ins.* 298 Mass. 161, 166–170 (which, however, may rest, in part at least, upon the specific statutory procedural provisions there considered). The commission, of course, is not intended by § 25C (d) blindly to endorse any schedule of prices submitted to it. On the contrary, the commission must decide upon some form of substantial information or evidence whether such prices comply with the statutory standard. See *Bond Liquor Store, Inc.* v. *Alcoholic Beverages Control Commn.* 336 Mass. 70, 73.

This is the background against which we must determine whether the commission, under c. 30A, § 2 (3) or § 3 (3), has properly given "emergency" approval of price schedules for March and April, 1963, without notice and hearing or opportunity to present views. The commission's vote of February 7, 1963 (see fn. 5, and related text), does not describe the "emergency" in detail, other than to say (a) that there was not time to comply with the notice and public hearing requirements of c. 30A, and (b) that it was contrary to the public interest to have no minimum prices in effect in March and April, 1963.

The vote strongly suggests that the occasion for the exercise of the "emergency" provision of § 2 (3) or § 3 (3) was that the commission encountered difficulties in arranging to comply with § 25C as interpreted in the *Kneeland* case, 345 Mass. 228, decided December 12, 1962. This was about thirty days prior to the last day (January 10, 1963) for price filings for March and April, 1963. The record does not disclose what these difficulties were, but it is probable that the commission's prior practices had to be materially changed in the light of the *Kneeland* decision.

These "emergency" provisions, see fn. 6, permit deviation from the prescribed procedures where speed in the adoption or amendment of regulations is essential. The

statutory finding that the action is necessary and a statement of the reasons for such action must be included in the regulation. The provision is somewhat more explicit than the comparable provision of § 4 (a) of the Federal Administrative Procedure Act, 5 U. S. C. § 1003 (a) (1964). See Curran and Sacks, op. cit. (see fn. 7), pp. 81–82; Davis, Administrative Law Treatise, §§ 6.04, 6.05.[9]

Massachusetts case authority is inconclusive as to the extent of an agency's powers to declare an "emergency" regulation. In *Dacey* v. *Milk Control Commn.* 340 Mass. 681, 684–685, we upheld an "emergency" order or regulation under § 2 (3) requiring milk dealers to produce, on an industry-wide basis, information needed for further regulatory activity. This order, however, was more limited in substantive effect than the order now before us. In other instances, as in the *Kneeland* case (345 Mass. 228, 235), the agency did not purport to act under emergency provisions. See *Massachusetts Gen. Hosp.* v. *Commissioner of Pub. Welfare,* 346 Mass. 739, 740, fn. 2. See also *Commissioner of Labor & Indus.* v. *Boston Housing Authy.* 345 Mass. 406, 415, fn. 10. We recognize that "emergency" findings under c. 30A must be carefully scrutinized because, if unwarrantably made, they may lead to improper denial of public hearings or comment on regulations, to evasion of the salutary purposes of c. 30A and possibly to other serious abuse. See Heady, Administrative Procedure Legislation in the States, 40–49.

Despite the meager character of the commission's statement of the "emergency" in respect of its approval of the price schedules, we cannot say that it was insufficient. The commission's statement must be viewed in the light of the commission's apparent difficulty in adjusting itself to compliance with § 25C as interpreted in the *Kneeland* decision. The record does not justify us in concluding that the com-

---

[9] See also Davis, Administrative Law Treatise, § 7.08, in which are collected authorities concerning "summary administrative action in advance of hearing" in various types of adjudicatory hearings (including rate cases). These authorities may provide a general analogy to the "emergency" power under § 2 (3).

mission had no substantial basis for the finding that the public interest required promulgation of some price schedule for March and April, 1963.[10]

3.   We have dealt with these cases upon the assumption that St. 1963, c. 258, amending c. 138, § 25C (d), has no application.   See fn. 2, sentence following point [A].   The commission's decision approving the March-April, 1963, price schedules took place on February 7, 1963.   The schedule took effect on March 1, 1963.   Pioneer's alleged violation took place on March 23, 1963, although the alleged violations in the Gandolfo and the Orlandella cases (see fn. 1), took place on April 20, 1963.   Chapter 258 did not become effective until April 11, 1963.   We see no basis for supposing that c. 258 was intended to have retroactive effect with respect to earlier commission determinations and to regulations then already in effect.   See *Building Inspector of Acton* v. *Board of Appeals of Acton,* 348 Mass. 453, 456–457, and cases cited.

4.   It is not necessary to recite in detail the facts in the companion cases (see fn. 1).   We have reviewed them. The same principles of law are applicable as in the Pioneer case.   We see no special circumstances of either companion case which would lead to any different result.   In each of these three cases, the final decree is affirmed.

*So ordered.*

---

[10] We recognize that the members of the commission incorrectly may have taken the view that the "emergency" finding relieved them from the necessity of immediate detailed consideration of the March-April minimum prices then pending before it.   The language of the commission's letter (to the filers of the price schedules) of February 25, 1963, quoted *supra,* strongly suggests undue reliance by the commission on the judgment of the filers and upon the "absence of any information" that the prices filed did not meet the standards found in § 25C (d).   The price schedule, however, was to be in effect only for two months and thus was within the time limitations for an "emergency" regulation, even under § 2 (3).   That section and § 3 (3) imply that an "emergency" regulation may be necessary upon occasion where opportunity for adequate hearing and detailed study does not exist.