McHugh, J.
I. BACKGROUND
Plaintiffs filed suit against defendant, the Commissioner of the Department of Public Welfare, seeking a declaratory judgment to the effect that the Department of Public Welfare (“DPW”) improperly adopted emergency regulations on December 3, 1992.[2] The regulations were designed to implement certain provisions of the Fiscal Year 1993 Budget. Plaintiffs assert in essence that, in adopting the new regulations, DPW (1) violated G.L.c. 30A, §3; (2) exceeded scope of statutory authority by making the new regulations retroactive and (3) acted in an arbitrary and capricious fashion by changing a long-standing definition of “subsidized housing.” Claiming the absence of any genuine issue of material fact bearing on that question, plaintiffs have moved for summary judgment.
The Commissioner, too, has moved for summary judgment claiming that plaintiffs have no standing to bring this action because they are not parties to an actual controversy. In the alternative, the Commissioner claims that plaintiffs’ challenges to the validity of the amended regulations lack merit.
II. UNDISPUTED FACTS
Certain facts are undisputed. Plaintiffs Solanghe Aguirre, Joan Seibel, and Ann Marie Pacheco receive assistance from federally reimbursed programs administered by DPW. Aguirre and Pacheco receive assistance through the Aid to Families with Depen-dant Children (“AFDC”) program and Seibel receives assistance through the Emergency Assistance to Elderly, Disabled and Children (“EAEDC”) program. Each plaintiff lives in privately-owned rental housing. In addition to AFDC or EAEDC assistance, each plaintiff now also receives a rent subsidy through a separate program known as the Massachusetts Rental Voucher Program (“MRVP”), 760 Code Mass. Reg. §49.00. The MRVP is administered by the Executive Office of Communities and Development (“EOCD”).
Prior to MRVP, plaintiffs, in addition to their AFDC or EAEDC benefits, received rental assistance through what was known as the Chapter 707 program. St. 1966, c. 707, codified in G.L.c. 12 IB, §§42-44A. Under the Chapter 707 program, plaintiffs, and other subsidy recipients who lived in privately-owned rental housing, paid a fixed portion of their income, initially 25% but later increased to 30%, for rent and utilities. Direct supplemental payments were made to the owner of the unit where Chapter 707 recipients were living.
At all material times, the AFDC program administered by DPW contained a provision for a $40.00 monthly rental allowance and the EAEDC program contained a provision for a $35.00 monthly rental allowance. Legislation governing those programs provided, however, that individuals who lived in “public” or “subsidized” housing were ineligible for the rental allowances. The legislation did not define “subsidized.” Nevertheless, under implementing DPW regulations, “subsidized” housing was defined as
housing occupied . . . under a . . . Chapter 707 lease ... in which the . . . rent is based in whole or in part on a percentage of [the recipient’s] income.
106 Code Mass. Reg. §§305.910, 313.735 (Rev. Oct. 1988). Plaintiffs thus were ineligible for the AFDC or EAEDC rental supplements because they participated in the Chapter 707 program and thus lived in “subsidized” housing.
The budget legislation for fiscal 1993, enacted in 1992, changed the foregoing scheme in several ways. First, the legislation eliminated funding for the Chapter 707 program. Second, the legislation ordered the EOCD to develop a “voucher” program for rental assistance to replace the unfunded Chapter 707 program. Third, the legislation provided that “there shall be no maximum percentage applicable to amount of income paid for rent by each household holding a rental assistance voucher." St. 1992, c. 133, §2, Line *464 Item 3722-9024. Instead, the amount of the monthly voucher was to depend on a variety of factors such as size of household, geographic location and family income. Id. The statutory prohibition on payment of rental allowances under the AFDC and EAEDC programs to persons living in “subsidized” housing remained. St. 1992, c. 133, §2, Line Items 4403-2000, 4408-1000.
In response to the legislation’s command, the EOCD created the MRVP by regulations effective November 1, 1992. 760 Code Mass. Reg. §49.00. Those regulations established two types of vouchers. One, called mobile vouchers, effectively travels with recipients to the place where they live. All of the plaintiffs have “mobile” vouchers. The other, called project-based vouchers, remains attached to a particular apartment.
As a consequence of the change, on November 1 plaintiffs began receiving rental assistance under the voucher program and ceased receiving benefits under Chapter 707. They allege, without contest, that they are now paying between 44 and 47% of their income for shelter costs as opposed to the 30% they paid under the Chapter 707 program.
After the voucher program became effective, DPW deemed voucher recipients to be residents of “subsidized housing" as that term was used in the statute and thus ineligible for rental assistance under the AFDC or EAEDC programs. Nevertheless, DPW regulations made no explicit reference to any “voucher” program. Accordingly, there was, at the least, a gap in the explicit language of the regulations applicable to those, like plaintiffs, who had been receiving benefits under Chapter 707. To fill that gap, the DPW, acting pursuant to G.L.C. 30A, §3, issued a Notice of Proposed Amendment of Regulations on or about November 20, 1992. In the notice, the DPW stated that it intended to replace references to Chapter 707 in the regulatory definition of “subsidized housing” with references to the MRVP. Following the 21-day period for public comment provided in G.L.c. 30A, §3, the DPW anticipated that the new definition of “subsidized housing” would become effective shortly after December 11, 1992.
Shortly before December 3, 1992, however, the DPW shifted gears. Apparently alarmed by its receipt of information that some legal services agencies were advising MRVP recipients that they were entitled to rental assistance under the AFDC and EAEDC programs and by the specter of a flood of claims the DPW considered to be necessarily invalid under the governing legislation, the DPW decided to promulgate an emergency regulation. Accordingly, on December 3, 1992, again purportedly acting pursuant to G.L.c. 30A, §3, the DPW issued a “Notice of Emergency Adoption" of the proposed amendments, effective November 1, 1992. Thereafter, on Januaiy 4, 1993, when the statutory period for public comment expired, the DPW filed with the secretary of state a notice of compliance and the emergency regulations became permanent. The sole change in the regulations was a substitution of references to the MRVP for references to Chapter 707 in the definition of “subsidized housing.”[3]
III. STANDARD FOR SUMMARY JUDGMENT
Until recently, the principles governing summary judgment in Massachusetts were those the Supreme Judicial Court had articulated in Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Under those principles,
[t]he party moving for summary judgment assumes the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue, even if he [or she] would have no burden on an issue if the case were to go to trial... If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat a motion for summary judgment. (Footnote omitted.)
In the recent case of Kourouvacilis v. General Motors Corp., 410 Mass. 706 (1991), however, the Court embraced the principles set forth by the Supreme Court of the United States in Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Under those principles,
a party who moves for summary judgment has the burden of initially showing that there is an absence of evidence to support the case of the nonmoving party shouldering the burden of proof at trial.[4] That burden is not sustained by the mere filing of the summary judgment motion or by the filing of a motion together with a statement that the other party has produced no evidence that would prove a particular necessary element of this case. The motion must be supported by one or more of the materials listed in rule 56(c) and, although that supporting material need not negate, that is, disprove, an essential element of the claim of the party on whom the burden of proof at trial will rest, it must demonstrate that proof of that element at trial is unlikely to be forthcoming.
Kourouvacilis, supra, 410 Mass, at 714. As a consequence, there are now two ways in which the party moving for summary judgment may meet the burden imposed by Mass.R.Civ.P. 56. The first of those follows traditional Massachusetts law:
(T]he moving party may submit affirmative evidence that negates an essential element of the nonmoving party’s claim.
Kourouvacilis, supra, 410 Mass. at 715 quoting Celotex Corp. v. Catrett, supra, 477 U.S. at 331-32 (Brennan, J., dissenting). Second, however,
the moving party may demonstrate to the court that the nonmoving party’s evidence is insufficient to establish an essential element of the nonmoving party’s claim ... If the nonmoving party cannot *465 muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law . . . Plainly, a conclusory assertion that the non-moving party has no evidence is insufficient . . . Such a “burden” of production is no burden at all and would simply permit summary judgment procedure to be converted into a tool for harassment . . . Rather, ... a party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record.
Id. Put another way,
a party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he [or shel demonstrates, by reference to material described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case. To be successful, a moving party need not submit affirmative evidence to negate one or more elements of the other party’s claim.
Kourouvacilis, supra, 410 Mass. at 716.
In applying that standard,
[w]here a moving party properly asserts that there is no genuine issue of material fact, “the judge must ask himself [or herself] not whether he [or she] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Ajudge’s mere belief that the movant is more likely to prevail at trial is not a sufficient basis for granting summary judgment.
Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
Those, then, are the principles the Court must apply to the motions the parties have filed here.
IV. DISCUSSION A. STANDING
The Commissioner first claims that plaintiffs lack standing to maintain this action because, even if the regulatory change is invalid, the statute prohibits payment of rental supplements to persons living in “subsidized” housing. As a consequence, the Commissioner maintains, plaintiffs have suffered no injury as a result of any regulatory impropriety because they would be ineligible for the benefits under any set of regulations the DPW could conceivably adopt.
It is true that, regardless of the regulation’s validity, plaintiffs have no standing to maintain this action if they have incurred no legally cognizable injury, The Villages Development Co., Inc. v. Secretary of the Executive Office of Environmental Affairs, 410 Mass. 100, 106 (1991), i.e., an injury arguably within the area of concern of the statute or regulatory scheme in question. Mass. Association of Independent Insurance Agents & Brokers, Inc. v. Commissioner of Insurance, 373 Mass. 290, 293 (1977). Because the standing inquiry focuses on who can assert a claim and not the merits of the claim they seek to assert, however, the threshold is quite low.
Here plaintiffs, whether they are right or wrong, assert a claim within the area of concern of both Chapter 30A, §3 and the regulations. Each of them at least arguably has been affected personally and adversely by operation of the regulations and by the fact that they were implemented without affording them an opportunity for comment. Insuring that individuals have an opportunity for comment absent emergencies is the primary purpose for c. 30A, §3. Accordingly, plaintiffs have standing to maintain this action.
B. THE REGULATION’S VALIDITY
Turning to the merits, questions about the validity of the DPW regulations can, and for ease of analysis should, be divided in three parts. First is whether the regulations are substantively proper, i.e., whether they accurately reflect the legislative command or are within the scope of authority the governing legislation contains. Second is whether they were properly promulgated as emergency regulations. Third and finally is whether they were retroactive and, if so, whether they were properly made retroactive.
1. Substantive Validity
In general, a regulation’s validity turns on whether it is consistent with legislative command or within the scope of authority legislation confers. See Cohen v. Board of Water Comm’rs, 411 Mass. 744, 749 (1992). See generally Borden, Inc. v. Comm’r of Public Health, 388 Mass. 707, 721-22, cert. denied, 464 U.S. 923 (1983). The Commissioner here takes that general proposition one step further for he contends that the change the emergency regulations effected was required by the funding changes the Legislature adopted as part of the fiscal 1993 budget. As the Commissioner puts it, the fundamental question in this case is whether the funding legislation itself prohibited DPW from granting plaintiffs the rental allowances they seek regardless of which regulation was in place at the time plaintiffs applied for those allowances. Because a regulation is necessarily invalid if in direct conflict with governing legislation, see Consolidated Cigar Corp. v. Department of Public Health 372 Mass. 844, 855 (1977), DPWs contention, if accurate, would surely validate, on a substantive level, the change the emergency regulations contained.
As stated earlier, the fiscal 1993 budget legislation authorized certain rental assistance under the AFDC and EAEDC programs but excluded from eligibility for that assistance AFDC and EAEDC recipients who lived in “subsidized housing.” St. 1992, c. 133, §2 line items *466 4403-2000, 4408-1000. The legislation did not explicitly define “subsidized housing.” The question therefore is whether MRVP recipients were living in “subsidized housing" as that term is used in the legislation and thus statutorily ineligible for AFDC or EAEDC rental assistance benefits.
In attempting to determine the answer to that question, the Legislature’s intent is controlling. Boswell v. Zephyr Lines, Inc., 414 Mass. 241, 247 (1993); First Federal Savings & Loan Ass'n v. State Tax Comm’n, 372 Mass. 478, 483 (1977). To determine and effect that intent, clear and unambiguous statutory language must be given its plain and ordinary meaning. Brook House Condominium Trust v. Automatic Sprinkler Appeals Board, 414 Mass. 303, 306 (1993); Nationwide Mutual Insurance Co. v. Comm’r of Insurance, 397 Mass. 416, 420 (1986). Indeed, a court cannot “resort to extrinsic sources to vary the plain meaning of a clear, unambiguous statute.” Dept. of Community Affairs v. Mass. State College Bldg. Authority, 378 Mass. 418, 427 (1979). In other words, “[a] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to effectuated.” Town of Oxford v. Oxford Water Company, 391 Mass. 581, 587 (1984), quoting Hanlon v. Rollins, 286 Mass. 444, 447 (1934).
The first task, therefore, is to look at the meaning of the language the legislature used. “When words are not defined in a statute, (the court) should ‘derive the words’ usual and accepted meaning from sources presumably known to the statute’s enactors, such as their use in other legal contexts and dictionary definitions.’ ” Town of Oxford v. Oxford Water Company, supra, 391 Mass. at 587, citing Commonwealth v. Zone Book Inc., 372 Mass. 366, 369 (1977).
The accepted definition of “subsidize” is “to furnish with a subsidy.” Webster's Ninth New Collegiate Dictionary 1176 (Merriam ed. 1987). “Subsidy” is defined as “a grant or gift of money ... a grant by a government to a private person ... to assist in an enterprise deemed advantageous to the public.” Id. Accord, Black’s Law Dictionary 1280 (5th Ed. 1979). The common meaning of “subsidized housing,” then, is housing for which the government furnishes financial aid. Clearly, plaintiffs live in such housing.
Added to the plain meaning of the statutory language is the context in which that language appeared.[5] By long-standing DPW regulation, those living in housing under benefits provided by Chapter 707 were living in “subsided housing.” A regulation that persists through various legislative cycles without producing legislation designed to change it is deemed to have obtained legislative approval. See, e.g., Harborview Residents' Committee. Inc. v. Quincy Housing Authority, 368 Mass. 425, 432 (1975). It is appropriate to conclude, therefore, that, at least by 1992, the DPW’s definition of “subsidized housing” had become a part of the definitional backdrop against which the Legislature was working.
It is also clear that the Legislature intended to substitute the MRVP for the Chapter 707 program. The line items concerning MRVP and the AFDC and EAEDC rental assistance programs appeared in the same piece of legislation. All three items concerned awarding rental assistance to eligible recipients. In material part, the MRVP statute provided that assistance under the MRVP would be available for “only those households that held Chapter 707 certificates.” St. 1992, c. 133, §2, line item 3722-9024. The statute also provided that “on and after November 1, 1992, there shall be no further payments made under said Chapter 707 . . . and on and after November 1, 1992, rental assistance [under the MRVP] . . . shall not be paid to any household which did not hold” a Chapter 707 certificate on October 1, 1992. Id.
Ordinarily, different statutes, and portions of the same statute, should be construed together to produce, if possible, an harmonious whole. See. Town Crier, Inc. v. Chief of Police of Weston, 361 Mass. 682, 688 (1972). When the relevant pieces of the funding legislation are construed together, it appears with near unblinking clarity that Chapter 707 housing was “subsidized housing,” that the MRVP was substituted for the Chapter 707 program effective November 1, 1992 and that both the substitution and the plain meaning of the term “subsidized” put MRVP recipients well within the sweep of the AFDC and EAEDC exclusion. DPW regulations simply saying so are therefore substantively valid.
Plaintiffs nevertheless contend that two considerations support their reading of the statutes and regulations and entitle them to the relief they seek. First, plaintiffs contend, accurately, that DPW regulations in effect on November 1, 1992 did not define MRVP recipients as part of the group living in “subsidized housing.” From that correct observation, plaintiffs continue by alleging that the deference generally given regulatory action within an agency’s jurisdiction requires a conclusion that MRVP recipients were not living in “subsidized housing” before the emergency regulations took effect the following month.
In two respects, plaintiffs’ argument misses the mark. The policy of deference to administrative agencies is not a policy of abdication. Warcewicz v. Department of Environmental Protection, 410 Mass. 548, 550 (1991). If the administrator’s interpretation of a statute is clearly wrong, the statute, not the administrative interpretation, controls. See Board of Education v. School Committee of Quincy, 415 Mass. 240, 243 (1993); Lowell Gas Co. v. Comm'r of Corporations and Taxation, 377 Mass. 255, 258 (1979). Here, whatever the regulation said, the statute prohibited the pay *467 ments under the AFDC and EAEDC programs plaintiffs seek.
Moreover, plaintiffs’ argument ignores the time factor. Before the fiscal 1993 legislation was passed there was no MRVP program. Obviously, therefore, a reference to the MRVP in regulations antedating the legislation would have been impossible. The fact that the regulations were not changed until December 3, 1992 and that the process for changing them was not begun until November 23, 1992, reflects regulatory inertia, not interpretation.[6] While regulatory interpretation is entitled to deference under some circumstances, inertia is not.
The second consideration to which plaintiffs point is that DPW historically allowed “many” individuals to receive AFDC and EAEDC rental assistance benefits even though they were receiving other rental subsidies that were not based on a percentage of the recipient’s income. Plaintiffs point to DPW’s practice in that regard as evidence of their claim that the December 3, 1992 change in definitions was not required by the statute but instead amounted to an exercise by DPW of discretion in an area the legislature had left to it. See Plaintiffs’ Brief at 16 & n.12.
The difficulty with that contention is manifold. First, only one of the three statutory assistance programs plaintiffs cite in support of their contention, the so-called Rent Supplement program found in 12 U.S.C. §1701 et seq., is a subsidy program. The other two, found in 12 U.S.C. §1715 and 12 U.S.C. §1715z-1, are not. Second, nothing in the record supports plaintiffs’ contention that recipients of aid under 12 U.S.C. §1701 have ever received AFDC or EAEDC rental assistance benefits. Third, the unchallenged affidavit of DPW’s Director of Policy states that DPW regards all such recipients as ineligible for AFDC and EAEDC rental assistance. O’Brien Affidavit, ¶9. On this record, in sum, there is no genuine issue of material fact concerning payment of AFDC or EAEDC benefits to individuals who receive housing subsidies not tied to income.
2. The Emergency Declaration
Turning to procedures, the emergency perceived by DPW can be described in various ways. Reduced to essentials, however, the emergency consisted of the possibility that, unless DPW regulations were changed promptly, many people might apply for AFDC or EAEDC rental assistance it seemed from the regulations that they were entitled to receive but really were not.[7] The result, DPW declared in the preamble to the emergency regulations themselves, “could . . . [be] unwarranted expenditure of public funds or ... a considerable administrative burden.”
Under Massachusetts law,
“]t]he standard for deciding whether an agency’s finding of an emergency under c. 30A was warranted is whether there was a ‘substantial basis’ for it.". . . “Such a finding ‘is given every presumption in its favor and is not subject to question injudicial proceedings unless palpably wrong.’ ”
Berrios v. Department of Public Welfare, 411 Mass. 587, 594 (1992). Accord, e.g., Pioneer Liquor Mart, Inc. v. Alcoholic Beverages Control Commission, 350 Mass. 1, 9-10 (1965).
Here, although the factual recitations supporting the existence of an emergency are not extensive, compare, e.g., Pioneer Liquor Mart, Inc. v. Alcoholic Beverages Control Commission, supra, 350 Mass. at 8, one cannot say that DPW was “palpably wrong” when it concluded that the conditions for issuing an emergency regulation existed. The confusion spawned by regulations that, after November 1,1992, did not mesh tightly with spending legislation raised the potential for significant litigation and administrative confusion, both of which might ultimately result in the needless expenditure of public funds. Whether the likelihood of litigation or confusion would have been exacerbated if DPW, having started the regular process trader G.L.c. 30A, §3 for amending a regulation, had waited approximately eight more days for the comment period to close is difficult to say. That kind of judgment, however, is always difficult to make, a circumstance that no doubt accounts for the manner in which the burden has been allocated.[8]
3. Retroactivity
Given all that has been said thus far, I am of the opinion that the DPW’s action did not have an imper-missibly retroactive impact. The plaintiffs were statutorily ineligible for AFDC and EAEDC rental assistance on and after November 1, 1992 regardless of what DPW did or did not do. DPW’s after-the-fact recognition of that ineligibility through changes in the regulatory definitions did not retroactively alter anything; it simply gave explicit recognition to what the statute itself had done.
ORDER
In light of the foregoing, defendant’s motion for summary judgment (Paper no. 18) is ALLOWED and plaintiffs’ motion (Paper No. 17) is DENIED. Judgment will enter declaring that
Emergency regulations promulgated by the Department of Public Welfare on December 3, 1992 that amended 106 Code Mass. Reg. §§305.910, 322.800 are valid and were validly promulgated.

 The emergency regulations amended 106 Code Mass. Reg. §§305.910,13, 322.800,13.

 The amended regulations now define “subsidized housing” in material part as “housing occupied ... under a... (2) Massachusetts Rental Voucher Program lease or occupancy agreement; or (3) other state or federally funded program in which the rent... is based in whole or in part on a percentage of [the recipient’s] income.” 106 Code Mass. Reg. §§305.910, 322.800.

 Kourouvacilis did not change the proposition that the moving party must show the absence of any genuine issue of material fact before the non-moving party will be required to file any affidavit-based response of any kind. Smith v. Massimiano, 414 Mass. 81, 85-86 (1993).

 Overall, the statutory changes appear designed to reduce the amount of governmental payments for housing assistance, a fact recognized in the implementing regulations: “In designing the new [MRVP] program, an intense effort was undertaken to help minimize the plight of those who will be severely impacted by the subsidy reductions . . . Subsidy values were varied according to geographic location, income level and family size.” 760 Code Mass. Reg. §49.01.

 St. 1992, c. 133 was enacted in July 1992 and gave all affected agencies a little over three months to design and implement the programs it required. I thus use the term “inertia” in a factual, not judgmental sense for it is not possible on this record to determine whether EOCD or DPW or both could realistically have promulgated implementing regulations more quickly.

 Some of the advice to AFDC recipients told them in unqualified terms that they were eligible for MRVP benefits and that they should present themselves quickly at DPW offices to claim the benefits before DPW acted to change the eligibility rules. See O’Brien Affidavit, Attachment 2. The record contains no definitive evidence of the number of potential claimants although plaintiffs estimate that about 5,300 AFDC recipients also received mobile MRVP benefits.

 The conclusion just reached makes unnecessary any approach to the question left open by the Supreme Judicial Court in Berrios v. Department of Public Welfare, 411 Mass. 587, 591 n.6 (1992), and addressed by this court earlier in its order denying plaintiffs’ motion for a preliminary injunction, i.e., whether an invalid emergency regulation can be validated by agency action taken after the regulation is promulgated.