van Gestel, Allan, J.
The underlying case involves verified claims by the plaintiff, Steven B. Belkin (“Bel-kin”), that the defendants are attempting unlawfully to remove him as the sole Governor of the Atlanta Hawks of the National Basketball Association (“NBA”).
This matter is presently before the Court on the application by Belkin for a preliminary injunction. In order to prevail on his request for preliminary injunc-tive relief, Belkin bears the burden of showing: his likelihood of success on the merits; that he will suffer irreparable harm if the injunctive relief sought is not granted; and that his harm, without the injunction, outweighs any harm to the defendants from being enjoined. GTE Products Corp. v. Stewart, 414 Mass. 721, 722-23 (1993); Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980).

BACKGROUND

In August and September 2003, Belkin, along with defendants Bruce Levenson (“Levenson”), Ed Peskowitz (“Peskowitz”), Michael Gearon, Jr. (“Gea-ron”) and J. Rutherford Seydel, II (“Seydel”), and others, began negotiations with Turner Broadcasting Systems, Inc. (“TBS”) leading to the acquisition of the Atlanta Hawks of the NBA and the Atlanta Thrashers of the National Hockey League (“NHL”), as well as the operating rights to Philips Arena in Atlanta, Georgia.
The transaction ultimately entered into with TBS was subject to a number of conditions, including NBA and NHL approval. In that connection, the NBA required that control for purposes of “NBA matters” had to be vested in a single individual, the team’s designated NBA Governor. The NBA provided a list of “NBA matters” that included, among other things, the authority to trade players and to hire coaches, as well as attendance and voting at NBA meetings.
Two agreements contain the terms and conditions that control the present dispute. The first agreement is the Amended and Restated Limited Liability Company Agreement of HTPA Holding Company, LLC. (the “Holdings, LLC Agreement”). The second agreement is the Agreement and Undertaking of the parties with the NBA (the “NBA Undertaking”).
Belkin and the defendants, along with a non-party, Felix Riccio, constitute the six individuals who make up the Board of Managers (“BOM”) of the HTPA Holding Company, LLC. Belkin is also the duly appointed NBA Governor for the entity.
There is a dispute among Belkin, on the one hand, and the individual defendants, on the other hand, over whether the Atlanta Hawks should enter into a trade with the Phoenix Suns to acquire for Atlanta a basketball player named Joe Johnson. Belkin apparently disfavors the deal on the terms proposed and the individual defendants apparently favor it. Belkin, as the NBA Governor for the Atlanta Hawks, has asserted his position as the sole team representative to the NBA and, thereby, has effectively stopped the trade.
The individual defendants gave Belkin an ultimatum to the effect that if he continues to oppose the trade the remaining majority of the BOM will remove Belkin as NBA Governor and designate a new Governor who favors the trade. Belkin, therefore, is seeking relief in this Court, relying therefore on the provisions of the Holdings, LLC Agreement and the NBA Undertaking.
Certain provisions of each agreement warrant recitation.
The Holdings, LLC Agreement, in para. 12.12 provides:
Each Member agrees with the other Members that the other Members would be irreparably damaged if any provisions of this Agreement are not performed in accordance with their specific terms and that monetary damages would not provide an adequate remedy in such event. Accordingly, it is agreed that, in addition to any other remedy to which the nonbreaching Members may be entitled, at law or in equity, the nonbreaching Members shall be entitled to injunctive relief to prevent breaches of the provisions of this Agreement and specifically to enforce the terms and provisions hereof in any action instituted in any court of the United States or any state thereof having subject matter jurisdiction thereof.
It is this paragraph, as well as Mass. G.L.c. 223A, sec. 3, that gives this Court jurisdiction to act in this matter.
Paragraph 5.1(k)(i) includes the following:
Each NBA Governor... appointed by the Company may be removed by the Board of Managers (but only as provided in Section 5.1 (k)(iii) in the case of Steve Belkin during the Initial Term) if he (A) votes in a manner or takes any position with respect to any material matter at meetings of the NBA Board of Governors ... or (B) takes any action to legally bind the Company, the Hawks or the Thrashers . .. with respect to any material matter, in either case, that he knows or reasonably should have known is materially inconsistent with either the specific directions or the stated position of the Board of Managers with respect to such material matter or, in the case of clause (B), is a matter on which he has not received direction of the Board of Managers (a “Removable Action”) . . .
Paragraph 5.1(k)(ii), includes the following: “Steven Belkin shall serve as the NBA Governor for an initial term of five years (the “Initial Term”) and until his successor is duly elected and qualified.” The Holdings, LLC Agreement was “entered into and shall be effective as of the 3rd day of March 2004 . . .” Thus, Belkin’s *623 initial term does not expire until at least March 31, 2009.
Paragraph 5.1(k)(iii) includes the following:
Steven Belkin may, but shall not be required to, be removed from his office as NBA Governor prior to the expiration of the Initial Term by written notice from the Board of Managers only in the event that the Board of Managers (based on an affirmative vote corresponding to an aggregate Voting Interest in excess of 50%) determines that he has taken a Removable Action and such Removable Action is not rescinded... within five (5) Business Days after written notice thereof is provided to him, or . . . within such other reasonable period as the Board of Managers may determine.
Paragraph 5.3 of the Holdings, LLC Agreement includes the following: “Except as otherwise provided in this Agreement and the NBA Undertaking ... all powers to control and manage the Business and affairs of the Company shall be exclusively vested in the Board of Managers . . .”
The NBA Undertaking, also executed by, among others, Belkin and the individual defendants, includes the following in section 5(d):
Notwithstanding anything to the contrary in the Transaction Documents [which includes the Holdings, LLC Agreement], at all times a single individual shall be the Team’s Governor... and shall have the power and authority, without requiring the consent of, and notwithstanding any direction from, any other person, to manage the business and affairs of the Team and to act for and bind the team with respect to all matters relating to the NBA Entities and the operations of the Team . . . The Governor shall be designated and shall be subject to removal by the Board of Managers of Holdings in accordance with Section 5. l(k) of the Holdings, LLC Agreement, provided that any designation or removal shall require the prior approval of the NBA Commissioner.
The Court has not been made aware of any “prior approval of the NBA Commissioner” to the removal of Belkin as NBA Governor for the Atlanta Hawks.
The Holdings, LLC Agreement, in paragraph 12.3 mandates that: “Every covenant, term, and provision of this Agreement shall be construed simply according to its fair meaning and not strictly for or against any Member.” It also provides in paragraph 12.9 that: “The laws of the State of Delaware . . . shall govern the validity of this Agreement, the construction of its terms, and the interpretation of the rights and duties arising hereunder.”
The NBA Undertaking, in section 16, requires that: “This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to agreements and to be performed entirely in New York.”

DISCUSSION

As stated above, in order to prevail on his request for preliminary injunctive relief. Belkin bears the burden of showing: his likelihood of success on the merits; that he will suffer irreparable harm if the injunctive relief sought is not granted; and that his harm, without the injunction, outweighs any harm to the defendants from being enjoined. GTE Products Corp. v. Stewart, 414 Mass. 721, 722-23 (1993); Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980). The law of Delaware, which governs the Holdings, LLC Agreement, is no different. See, e.g., In re Aquila, Inc., 805 A.2d 184, 189 (Del.Ch. 2002); Gimbel v. Signal Companies, Inc., 316 A.2d 599, 602-03 (Del.Ch. 1974).
The defendants argue that Belkin, by blocking the Johnson “sign and trade” proposal has taken action that is materially inconsistent with the stated position of a majority of the BOM. Consequently, they contend that Belkin cannot meet his burden of showing the requisite likelihood of success on the merits. Among other things, in making this argument the defendants overlook completely the requirement that “any . . . removal shall require the prior approval of the NBA Commissioner.” See NBA Undertaking, section 5(d). With the absence of that approval, Belkin’s likelihood of success, at least at this time, is unchallengeable.
Further, this Court is not quite so sanguine as the defendants that the NBA Commissioner’s approval of Belkin’s removal will be readily forthcoming. It is hardly apparent on the present record that the deal for Johnson, however talented he may be, given what was needed from the Atlanta Hawks in order to affect it, is in the economic best interest of the franchise. In short, it is not readily apparent that Belkin’s action constitutes a removable event. Surely, the Commissioner, when asked for approval, will have to consider all of the ramifications of the Johnson trade, not just that the defendants and others want him. Sometimes the cost is just too great.
To use a basketball term, Belkin’s inability to establish before a judge or a panel of arbitrators that he committed no removable event and the defendants’ victory on the point, is far from a slam dunk.
As for the irreparable injury component, the Holdings, LLC Agreement provides the necessary component. It bears repeating here.
Each Member agrees with the other Members that the other Members would be irreparably damaged if any provisions of this Agreement are not performed in accordance with their specific terms and that monetary damages would not provide an adequate remedy in such event. Accordingly, it is agreed that, in addition to any other remedy to which the non-breaching Members may be entitled, at law or in equity, the nonbreaching Members shall be entitled to injunctive relief to prevent breaches of the provis *624 ions of this Agreement and specifically to enforce the terms and provisions hereof in any action instituted in any court of the United States or any state thereof having subject matter jurisdiction thereof.
(Emphasis added.) Holdings, LLC Agreement, in para. 12.12.
The foregoing language not only obviates the need for the ordinary irreparable damage analysis, it adds contractually binding provisions that this Court is not at liberty to change or ignore. Sophisticated parties, with advice of sophisticated counsel, chose the specific wording of their agreement. Those words, in the absence of something illegal or violative of public policy, must be honored by the Court.
As for balancing of the harms, once again the parties’ own agreements have provided the only answer available to this Court. The defendants claim devastating results for the Atlanta Hawks if the Joe Johnson trade is not accomplished. They speak warmly of Johnson’s talents. He may not, however, be the only basketball player who can serve his potential role for the Hawks. Nor is it clear that getting Johnson and giving up two first round picks in the 2006 player draft and another player who was himself a first round pick, along with the amount of money required, would not equally as well have an equally devastating result for the franchise.
Additionally, the parties themselves have already performed the balancing act by virtue of their inclusion of para. 12.12 in their agreement.
On the record before this Court, the preliminary injunctive relief sought must be granted. Further, this Court determines that, for good cause, no security need be given by Belkin in connection with the following preliminary injunction as might otherwise be required by Mass.R.Civ.P. Rule 65(c).

PRELIMINARY INJUNCTION

Upon payment of the requisite fee, the defendants, their officers, employees, agents and attorneys, and any persons or entities in active concert or participation with them, are preliminary enjoined from removing Steven B. Belkin from his position as NBA Governor for the Atlanta Hawks, in the absence of full and complete compliance with paragraph 5. l(k) of the Amended and Restated Limited Liability Company Agreement of HTPA Holding Company, LLC and section 5(d) of the Agreement and Undertaking of the parties with the National Basketball Association.
This preliminary injunction shall remain in full force and affect until further order of this Court or any appropriate appellate court.