van Gestel, Allan, J.
This matter returns to the Court on the defendants’ Emergency Motion to Dissolve the Preliminary Injunction, Paper #14, issued herein just three days ago. The Memorandum and Order on Motion for Preliminary Injunction, issued on August 9, 2005, at 12:45 p.m., less than an hour after the close of oral argument, sets forth the Court’s reasoning for its action [19 Mass. L. Rptr. 621). Full knowledge thereof is presumed.

BACKGROUND

While emotions may be running high among the parties, the original entry of the preliminary injunction in this case was not a close question. The contracts by which the parties chose to govern themselves almost single-handedly dictated the result. This was not an attempt by this Court to assess, effect or judge the merits of the possible trade for Joe Johnson. Rather, it was an application of well-recognized legal principles to uncontested facts and contracts. In short, it was a legal decision, not a basketball decision.
Steven B. Belkin (“Belkin”), whose duty it was, made a business judgment. Both the Holdings, LLC Agreement and the NBA Undertaking — not this Court — put Belkin in the position to do so. On the record presented, Belkin’s judgment was by no means irrational. The defendants differed in their business judgment, and their judgment too has a rational base. Judges, however, must be very chary before interfering with business judgments.
Whatever they may have had in mind, irreparable harm to Belkin was agreed to by the defendants in the simple language of paragraph 12.12 of the Holdings, LLC Agreement that each defendant signed. Regarding the defendants themselves, no irreparable harm of any kind was, or has yet been, suggested. Indeed, the only irreparable harm argued to the Court by counsel for the defendants was to the basketball team, its general manager, its players, its coaches and its supporters. None of those general manager, players, coaches and fans are parties to this case. There was, therefore, and there remains, no harm to the defendants for the Court to balance.
Since the granting of the preliminary injunction, the defendants have approached Commissioner David Stern (the “Commissioner”) of the NBA and have obtained, apparently ex parte, his prior approval of the removal of Belkin as the Atlanta Hawks’ NBA Governor. In an affidavit submitted by the Commissioner he states, among other things, the following in paragraph 7:
In reaching this conclusion [to pre-approve the removal of Belkin], I express no view at all as to whether the proposed trade for Mr. Johnson is wise, unwise, well-considered or ill-considered. I also do not mean to suggest that, in preventing the trade, Mr. Belkin has done anything wrong or has acted improperly in any way. The test for removal under paragraph 5.1(k) is not founded upon misconduct; it is based solely on the Governor taking action in connection with a material matter that “legally binds” the team but is at odds with the wishes of the majority of the Board of Managers.
The Commissioner, in pre-approving the removal of Belkin as NBA Governor, was acting pursuant to section 5(d) of the NBA Undertaking. That section reads in material part:
Notwithstanding anything to the contrary in the Transaction Documents [which includes the Holdings, LLC Agreement], at all times a single individual shall be the Team’s Governor... and shall have the power and authoriiy, without requiring the consent of and notwithstanding any direction from, any other person, to manage the business and affairs of the Team and to act for and bind the team with respect to all matters relating to the NBA Entities and the operations of the Team . . . The Governor shall be designated and shall be subject to removal by the Board of Managers of Holdings in accordance with Section 5.1 (k) of the Holdings, LLC Agreement, provided that any designation or removal shall require the prior approval of the NBA Commissioner . . .

DISCUSSION

However characterized, the present request is, in substance, a motion for reconsideration and it will be treated as such. Ordinarily, motions for reconsideration must be served and processed consistent with *43 Superior Court Rule 9A. See Superior Court Rule 9D. The present motion was neither so served, nor so filed.
Reconsideration is rarely granted in the absence of some significant change in circumstance or some glaringly apparent error in the granting of the relief challenged. The usual route to challenge the entry of a preliminary injunction is pursuant to G.L.c. 231, sec. 118, first paragraph. In that kind of challenge a hearing is held before a Single Justice of the Appeals Court who applies a de novo review. See, e.g., Manfrates v. Lawrence Plaza Limited Partnership, 41 Mass.App.Ct. 409, 412 n.4 (1996).
Here, there has been a significant change in circumstances — the NBA Commissioner’s pre-approval of the removal of Belkin as NBA Governor now has been obtained — and therefore, the foregoing notwithstanding, this Court heard the parties again and considered once more its prior decision. The latter, while promptly issued — as the defendants themselves urged upon the Court — was not a casual effort. This Court, particularly, has substantial experience in addressing requests for injunctive relief in complex business matters. It is quite conversant with both Massachusetts and Delaware law in that regard.
“The scope of an injunction depends upon a comparative appraisal of all of the facts of the case, and what is reasonable will depend in each instance on the particular facts.” Jillian's Billiard Club of America, Inc. v. Beloff Billiards, Inc., 35 Mass.App.Ct. 372, 376 (1993).
As indicated above, there has been no change in circumstances regarding those parts of the test for a preliminary injunction that relate to the need for irreparable harm or the balancing of the harm between the parties. The parties are bound by their own agreement.
The change that has occurred relates to the element of likelihood of success on the merits. In the absence of “the prior approval of the NBA Commissioner,” required by section 5(d) of the NBA Undertaking, any removal by the Board of Managers (“BOM”) of Belkin as NBA Governor would have constituted an ineffective and clear breach of para. 12.12 of the Holdings, LLC Agreement. Now that the impediment of the Commissioner’s prior approval has been removed, this Court must reexamine again the likelihood-of-success element.
On this point, Belkin, who sought the preliminary injunction, and who now seeks to maintain it, has the burden of proof. Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 620 (1980); Robinson v. Secretary of Administration, 12 Mass.App.Ct. 441, 451 (1981). The issue, however, is not nearly so simple as the Commissioner would have the Court and the parties believe.
Paragraph 5.1 (k) (i) of the Holdings, LLC Agreement, to which the Commissioner is not a party,[2] sets forth the removal provision, in part, as follows:
Each NBA Governor . . . appointed by the Company may be removed by the Board of Managers (but only as provided in Section 5.1(k)(iii) in the case of Steve Belkin during the Initial Term) if he . . . takes any action to legally bind . . . the Hawks . . . with respect to any material matter . . . that he knows or reasonably should have known is materially inconsistent with either the specific directions or the stated position of the Board of Managers with respect to such material matter or ... is a matter on which he has not received direction of the Board of Managers (a “Removable Action”) . . .
(Emphasis added.)
In proffering his “legal” opinion to this Court, the Commissioner focuses solely on paragraph 5.1 (k)(i). He seems to ignore entirely paragraph 5.1(k)(iii). It is the latter that governs the removal of Belkin during his “Initial Term.”[3] Paragraph 5.1(k)(iii) includes the following:
Steven Belkin may, but shall not be required to, be removed from his office as NBA Governor prior to the expiration of the Initial Term by written notice from the Board of Managers only in the event that the Board of Managers (based on an affirmative vote corresponding to an aggregate Voting Interest in excess of 50%) determines that he has taken a Removable Action and such Removable Action is not rescinded ... within five (5) Business Days after written notice thereof is provided to him, or . . . within such other reasonable period as the Board of Managers may determine.
A “Removable Action” for present purposes is the taking of any action by Belkin “to legally bind the . . . Hawks ... with respect to any material matter... that he knows or reasonably should have known is materially inconsistent with either the specific directions or the stated position of the Board of Managers with respect to such material matter . . .” See paragraph 5. l(k)(i).
Recall, from above, the Commissioner’s comments in his affidavit.
In reaching this conclusion [to pre-approve the removal of Belkin as NBA Governor], I express no view at all as to whether the proposed trade for Mr. Johnson is wise, unwise, well-considered or ill-considered. I also do not mean to suggest that, in preventing the trade, Mr. Belkin has done anything wrong or has acted improperly in any way.
Also consider the first part of section 5(d) of the NBA Undertaking, which reads:
Notwithstanding anything to the contrary in the Transaction Documents [which includes the Holdings, LLC Agreement], at all times a single individual shall be the Team’s Governor... and shall have the power and authority, without requiring the consent of, and notwithstanding any direction from, any other person, to manage the business and affairs of *44 the Team and to act for and bind the team with respect to all matters relating to the NBA Entities and the operations of the Team . . .
(Emphasis added.)
By its express terms, the Holdings, LLC Agreement is subject to the NBA Undertaking and the NBA Rules and Agreements. See para. 12.14(a). Thus, the provisions of section 5(d) must be read as at least modifying, and possibly trumping, anything in the Holdings, LLC Agreement.
The clash between paragraph 5.1 (k) (i) of the Holdings, LLC Agreement and section 5 (d) of the NBA Undertaking, particularly as it relates to Belkin during his Initial Term as NBA Governor, clearly creates ambiguity as to the rights and duties of the BOM when attempting to remove Belkin. Ambiguity exists “where the phraseology can support reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken.” Suffolk Constr. Co. v. Lanco Scaffoldings Co., 47 Mass.App.Ct. 726, 729 (1999).
Once the contract is determined to be ambiguous, the court is free to look to extrinsic evidence ... in order to give a reasonable construction in light of the intentions of the parties at the time of the formation of the contract. . . When such evidence is considered, it may be that a logical answer consistent with the purposes of the agreements and intentions of the parties will emerge.
We recognize, however, that this may be a question that the parties simply never considered. Should the trial court so determine, that does not frustrate a sensible resolution. “When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court.”... In these circumstances, the court does not base a decision upon evidence of prior negotiations or agreements, although such evidence may be admitted as bearing on what may be reasonable ... “(W]here there is in fact no agreement, the court should supply a term which comports with community standards of fairness and policy rather than analyze a hypothetical model of the bargaining process.”
President and Fellows of Harvard College v. PECO Energy Company, 57 Mass.App.Ct. 888, 896 (2003).
Obviously, any resolution of the ambiguity must follow, at minimum, a hearing and the presentation of extrinsic evidence. That cannot be accomplished on the present record. Thus, at this time the Court must consider the situation, cognizant of the fact that it is Belkin’s burden to show his likelihood of success. Given the ambiguity in the Holdings, LLC Agreement caused by the language in the NBA Undertaking this Court cannot conclude that Belkin has carried his burden. With the prospects for ultimate determination of the ambiguities in balance, this Court is reluctant “to order the plaintiff and the defendant(s) into an uneasy harness.” Westinghouse Broadcasting Co., Inc. v. New England Patriots Football Club, Inc., 10 Mass.App.Ct. 70, 74 (1980).
As matters presently stand, Belkin has not yet been removed. All that has occurred is that the Commissioner has pre-approved such removal and, apparently, pre-approved the designation of Michael Gearon, Jr. as Belkin’s replacement.
To complete Belkin’s removal as NBA Governor, the BOM now must comply strictly with the requirements therefor in the Holdings, LLC Agreement. This involves “written notice from the Board of Managers only in the event that the Board of Managers (based on an affirmative vote corresponding to an aggregate Voting Interest in excess of 50%) determines that he has taken a Removable Action and such Removable Action is not rescinded . . . within five (5) Business Days after written notice thereof is provided to him.” Para. 5.1(k)(iii). This includes: a duly noticed meeting of the BOM, pursuant to paragraph 5.2(b), at which the notice to remove is voted upon; written notice to Belkin of the results of that vote thereafter; and, the expiration of the five-day cure or rescission period that begins with the notice of removal. To what extent any of the foregoing has occurred is not something that this Court can determine on the record presented.

ORDER

For the reasons stated above, the preliminary injunction issued on August 9, 2005, is hereby DISSOLVED.
This dissolution, however, is not intended and should not be construed as a ruling on the issue of whether the Board of Managers’ actions to be taken at 3:00 p.m. on August 12, 2005, or at any subsequent date, are legally effective to cause the removal of Steven B. Belkin from his position as NBA Governor in the absence of full and complete compliance with paragraph 5. l(k) of the Amended and Restated Limited Liability Company Agreement of HTPA Holding Company, LLC and section 5(d) of the Agreement and Undertaking of the parties with the National Basketball Association, including, without limitation, affording Belkin the opportunity and right to rescind and cure any Removable Action in accordance with paragraph 5.1(k)(iii).
Further, this dissolution is not to be deemed or treated as the law of this case and is to have no effect whatsoever on any later resolution of the ambiguities discussed above

 This fact that does not stop the Commissioner from lecturing the Court on how to interpret that contract.

 Belkin’s Initial Term does not expire until March 31, 2009.